(No. 18616.—

THE NATIONAL MALLEABLE CASTINGS COMPANY, Defendant in Error, *vs.* THE IROQUOIS STEEL AND IRON COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1929.*

EDWIN J. RABER, for plaintiff in error.

BUTLER, LAMB, FOSTER & POPE, (ALLAN J. CARTER, and ARTHUR FISHER, of counsel,) for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error, the National Malleable Castings Company, began an action of assumpsit in the municipal court of Chicago against plaintiff in error, the Iroquois Steel and Iron Company, for money had and received. There was a trial by the court without a jury and a judgment was rendered against plaintiff in error for $2223.87, together with $383.30 interest. An appeal was prosecuted to the Appellate Court for the First District, where the judgment was affirmed upon defendant in error entering a *remittitur* of the interest. The case comes to this court upon a writ of *certiorari*.

This suit was to recover excessive payments on four cars of iron delivered by plaintiff in error to defendant in error which are alleged to have been paid for on the basis of false weights. Defendant in error was a large user of malleable iron at one of its plants in Cicero, Illinois. Plaintiff in error was a dealer in scrap iron and had a yard in Chicago which was connected by a side-track with the

Baltimore and Ohio Chicago Terminal Railroad Company. This railroad also had a switch-track at the Cicero plant of defendant in error. Defendant in error purchased this iron through certain parties referred to in the pleadings as brokers, who bought it from dealers, including plaintiff in error. There were written contracts between defendant in error and the brokers and between the brokers and plaintiff in error and other dealers. None of the brokers ever had possession of the iron nor did any of their agents see the shipments. Each car was delivered by plaintiff in error to the railroad company on bills for direct shipment from the yard of plaintiff in error to the plant of defendant in error, in which bills plaintiff in error was named as consignor and defendant in error as consignee, and plaintiff in error paid the freight.

The first car was received by defendant in error on May 17, 1920. The iron was bought from Rotter-Speer & Co., of Cleveland, Ohio, which had a contract with defendant in error for the delivery of 500 tons of scrap iron. Rotter-Speer & Co. bought the iron from Feinberg & Kahn, of Chicago, who bought it from plaintiff in error. It is claimed by defendant in error that the car was billed for 97,700 pounds, payment was made for 97,460 pounds, its actual weight was 53,200 pounds, and there was a shortage of 44,260 pounds, amounting to $602.64. Evidence was admitted tending to show that on May 12, 1920, Rotter-Speer & Co. advised defendant in error that the car had been shipped; that on May 24, 1920, they sent defendant in error a bill for 97,700 pounds, a check was sent by defendant in error to them on June 9, 1920, for its payment, and Rotter-Speer & Co. paid Feinberg & Kahn $1439.33. Morris Kahn testified that Feinberg & Kahn paid plaintiff in error for this car but he did not remember the amount; that they had destroyed all of their books showing this payment after they thought the government was through making examinations relative to their income tax.

The second car was received by defendant in error on November 17, 1920. The iron was bought from the Commercial Steel and Supply Company of Cleveland, Ohio, with whom defendant in error had a contract. This firm is now out of business, and defendant in error was unable to produce the books showing payment by this corporation to plaintiff in error, from whom the iron was purchased. It is claimed by defendant in error that this car was billed for 103,900 pounds, payment was made for 103,640 pounds, the actual weight was 25,700, and the shortage was $1009.04. Evidence was admitted that on November 15, 1920, defendant in error received notice from the Commercial Steel and Supply Company that the car had been shipped; that on November 15, 1920, defendant in error received an invoice from the Commercial Steel and Supply Company for this car with a net weight of 103,900 pounds, amounting to $1345.14, together with a bill dated November 22, 1920, for $1166.49 for a car not in controversy, and that on December 7, 1920, the check of defendant in error was sent to the Commercial Steel and Supply Company in full payment for these two cars. A duplicate freight bill of the railroad company, dated November 15, 1920, was introduced in evidence, showing a weight of 25,700 pounds on this car.

The third car was received by defendant in error on May 21, 1921. The iron was purchased by it from the Ohio Iron and Metal Company and by that company from plaintiff in error. Defendant in error claims that the car was billed as weighing 76,700 pounds, payment was made on the basis of 76,420 pounds, the actual weight was 27,900 pounds, and there was a shortage of 48,520 pounds, amounting to $324.91. Evidence was admitted tending to show that on May 24, 1921, defendant in error received an invoice from the Ohio Iron and Metal Company for this car showing a net weight of 76,700 pounds, amounting to $496.49; that on June 1, 1921, a check was sent by the de-

fendant in error to the Ohio Iron and Metal Company for $939.07, being for 76,700 pounds on this car and for another car not in controversy, and that the Ohio Iron and Metal Company paid plaintiff in error $479.38 for this car on the basis of 76,700 pounds. A duplicate freight bill of the railroad company was admitted in evidence showing a weight of 27,900 pounds on this car.

The fourth car was received by defendant in error on May 24, 1921. The iron was purchased from Hickman & Williams, who purchased it from plaintiff in error. Defendant in error claims that it was billed as weighing 75,300 pounds, payment was made upon that basis, the actual weight was 32,400 pounds, and there was a shortage of 42,900 pounds, amounting to $287.28. Evidence was admitted tending to show that on May 26, 1921, an invoice was received by defendant in error from Hickman & Williams showing a net weight of 75,300 pounds, amounting to $484.99; that on June 5, 1921, a check to the order of Hickman & Williams was sent by defendant in error and was paid, and that Hickman & Williams received from plaintiff in error an invoice for $479.03, dated June 2, 1921, for 75,300 pounds. A duplicate freight bill of the railroad company showed 32,400 pounds as the weight of this car. On June 21, 1921, Hickman & Williams paid to plaintiff in error $479.03 on this car.

When each car reached the plant of defendant in error it was again weighed by the employees of defendant in error in compliance with the written contracts between defendant in error and its brokers, which provided that defendant in error was to pay on the basis of its own weights. Defendant in error claims it paid for these cars on fraudulent weights made at its plant by Thomas Moore, one of its employees who was working under the direction of Forrest Allen, another employee. John D. Hiatt, superintendent of purchases for defendant in error, testified that shortages and a system of false weights were discovered by

defendant in error in February, 1922. Moore testified that he had been changing weights at Allen's direction for a year or a year and a half but did not know how many cars had been changed. The evidence shows that each of the four cars was weighed by the railroad company on its Homan avenue scales immediately after it left the yard of plaintiff in error and before it was delivered to defendant in error. Two of the men who weighed these cars testified that the practice was for the weighmaster to enter the gross weight, the tare weight and the net weight on switching cards and to transfer the weights to a permanent book immediately upon returning from the scales to the office, which were about half a block apart. The original book of weights of the railroad company was admitted in evidence. On each of the four cars the railroad sent a freight bill to plaintiff in error. Plaintiff in error was served with notice to produce its books, which it failed to do. The railroad duplicates of the freight bills on the second, third and fourth cars were admitted in evidence. Clifford Gordon, secretary of plaintiff in error, testified that plaintiff in error was paid on the basis of the weights sent to it by defendant in error. Walter S. Gordon, president of plaintiff in error, testified that about the middle of February, 1922, they destroyed all of the books of the company for the period prior to January 1, 1922. They both testified that someone broke into their safe and scattered these books and documents upon the floor. They made no attempt to save any of the entries before burning the books, which covered transactions as recent as two weeks prior to the date of the destruction. Clifford also testified that correspondence files with various consignors and consignees were all destroyed several years earlier.

It is insisted by plaintiff in error as a matter of law that an action for money had and received does not lie under the facts in this case; that there is no evidence that plaintiff in error received any pay for the first two cars;

that plaintiff in error was an entire stranger to the contracts between defendant in error and its brokers; that when defendant in error made a payment the money paid became the property of the party to whom it was paid; that on the last two cars the brokers testified they paid plaintiff in error from their own funds before they received payment from defendant in error, and the money plaintiff in error received on these two cars could not have been the money of defendant in error; that the relation of defendant in error and the parties from whom it purchased was that of vendor and vendee and there was no question of agency; that before defendant in error can recover it must prove that plaintiff in error had money belonging to defendant in error; that express privity was not necessary but identity of funds must be established and traced.

Defendant in error insists that the funds overpaid belonged to it as the result of an obligation implied by law; that express privity was not necessary; that it is conceded that there were contracts of purchase by defendant in error from several parties referred to in the pleadings as brokers, who, in turn, bought from plaintiff in error and instructed it to ship directly to defendant in error, and it did so ship; that this constituted a novation or assignment; that were it not for the opportunity of a direct suit against plaintiff in error, defendant in error would be compelled to sue four different parties, and these four parties would be compelled to sue plaintiff in error or the next party in line.

The decisions in various jurisdictions are not uniform on the question as to when an action of assumpsit may be maintained for money had and received, and it is contended that there is some conflict in the decisions in this State. Regardless of what the rule may be in other jurisdictions and regardless of prior decisions of this court, the rule was definitely settled by this court in *Highway Comrs.* v. *City of Bloomington,* 253 Ill. 164, in an exhaustive and instructive opinion which reviews the history of this form of

action together with the holdings of various courts. It was there held that the action was an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. Although the action is in form *ex contractu,* the alleged contract is purely fictitious and the right of recovery is governed by principles of equity and no privity of contract is necessary. The action may be maintained in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex æquo et bono* belongs to another. The right to recover is governed by principles of equity although the action is at law.

Defendant in error insists that plaintiff in error is in no position to question the ruling of the trial court as to the right of defendant in error to recover in this form of an action, for the reason that no propositions of law were submitted to the trial court on this point. At the close of the evidence on behalf of defendant in error, plaintiff in error made a motion to exclude certain exhibits and contracts between defendant in error and its brokers. This motion did not extend to all of the evidence and did not ask for a finding in favor of plaintiff in error. It was overruled and was not renewed at the close of all of the evidence. No propositions of law were offered, given or refused. In *Pressed Steel Equipment Co.* v. *Pressteel Co.* 312 Ill. 359, it was held that where the declaration alleged a good cause of action and there is issue thereon and a trial is had before the court without a jury, and no questions of law are raised at the trial in regard to the admission or exclusion of evidence, no propositions of law submitted to the court to be ruled upon are preserved in the bill of exceptions, no motion is made in the trial court to find for the defendant and no demurrer to the evidence interposed, no question of law can be raised in this court

in respect to the findings of the trial court and the judgment of the Appellate Court must necessarily be affirmed. In *National Can Co.* v. *Weirton Steel Co.* 314 Ill. 280, it was held that the above rule does not mean that upon such a record in no event can the correctness of the judgment, when challenged by proper assignments of error, be reviewed. In such case, where the claim is that the judgment of the Appellate Court is erroneous and such claim is based on the assumption that the record is insufficient to sustain the judgment, this court is authorized to entertain assignments of error which question the validity of the judgment, the only question for consideration being whether or not the record shows that the judgment is erroneous.

The record in this case, in so far as this court has jurisdiction to review it, does not show that the judgment is erroneous. In order to entitle defendant in error to recover it was not required to establish a contractual relation between any or all of the parties. All it was required to do was to show that plaintiff in error had in its possession funds belonging to defendant in error which it ought not to retain. The facts were conclusively determined by the judgment of the Appellate Court. There was competent evidence fairly tending to show that in the dealings between the parties erroneous payments were made to plaintiff in error which would not have been made if there had been no corresponding payments by defendant in error to its brokers. The purchase of each car was a complete transaction between all of the parties thereto, the acts of all of the parties were necessary to complete the transaction, and if, as a result thereof, plaintiff in error obtained money belonging to defendant in error which it had no right to keep, defendant in error had the right to maintain the action. Under the facts appearing in the record an action of assumpsit for money had and received could be maintained.

Plaintiff in error insists that there is no evidence, either competent or incompetent, to sustain the judgment as to the

first two cars, which amounts to $1611.68 of the $2223.87 recovered; that the evidence shows that defendant in error paid Rotter-Speer & Co. for the first car and the latter paid Feinberg & Kahn, but there is no proof as to the amount paid by Feinberg & Kahn to plaintiff in error; that on the second car defendant in error paid the Commercial Steel and Supply Company, but there is no evidence that the latter ever paid plaintiff in error. Clifford Gordon, who was the book-keeper of plaintiff in error at the time of these transactions and who was the secretary of the corporation at the time of the trial, testified that these shipments were prepaid by plaintiff in error on expense bills from the railroad company; that consumer's weights mean the weights of the party receiving the shipment, as shown either from his own scales or other scales; that plaintiff in error was paid by the party to whom the material was sold, on the basis of the weights it received from defendant in error; that if the weights varied plaintiff in error had to take the purchaser's weights as correct. Plaintiff in error offered no evidence as to what it claimed were the true weights. Under this state of the proof there was evidence fairly tending to show that plaintiff in error received pay for the first two cars in the amounts as found by the trial court.

The second car was weighed by J. H. Reigler and the third car was weighed by John Madigan, both of whom were employees of the railroad company and neither of whom testified. The handwriting of each was identified in a book in which the weights of the cars were kept. Counsel for defendant in error stated that Madigan, who was a city fireman, was at a hospital where his brother was in a serious condition and counsel would not call him. A witness testified that the last time he heard of Reigler he was in Michigan or Ohio, where he was employed. The court admitted in evidence the entry made by each, and plaintiff in error insists that this was not in compliance with sec-

tion 3 of chapter 51 of our statutes, because the preliminary evidence did not show that the parties making the entries were deceased or non-residents of the State. There was evidence tending to show that Reigler was a non-resident, and for that reason there was no error in admitting the entry made by him. The entry made by Madigan was admitted subject to the right of counsel for plaintiff in error to cross-examine him and subject to verification by Madigan. He was not later called as a witness, and there is a controversy between counsel as to whose duty it was to call him for cross-examination. Other employees of the railroad, including chief clerks under whose direction the entries were made, testified that the book containing the entries was a book of original entry; that it was a permanent record of weights made on the dates and at the times shown therein; that the entries were in the handwriting of Madigan and Reigler; that there had been no complaints about the scales and no question raised about the weights; that to the best of their knowledge the entries were correct records at the time they were made; that these weights were used to make up the bills; that the weights were first put on switch-cards and were immediately put into the book. It has been held by this court that where the testimony of witnesses who made the entries is not available it is competent to establish the authenticity of the book by other evidence, and that it is sufficient if a book is verified by a supervising officer who knew it to be a book of regular entry kept in the usual course of business, regard being had to the nature of the business and the method of its conduct in determining what is the best evidence. (*Richardson Fueling Co.* v. *Seymour,* 235 Ill. 319; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *City of Chicago,* 242 id. 178; *Inter-State Finance Corp.* v. *Commercial Jewelry Co.* 280 id. 116; *People* v. *Small,* 319 id. 437.) The same rule is announced in 3 Wigmore on Evi-

dence, (2d ed.) sec. 1530. The two entries were properly identified to admit them in evidence.

Morris Kahn, of the firm of Feinberg & Kahn, was called as a witness for defendant in error. He identified a car book kept by his firm showing the invoice of plaintiff in error to Feinberg & Kahn on the first car, the invoice of Feinberg & Kahn to their vendee, and an adjustment of weights. It is insisted that these entries were improperly admitted in evidence because the figures "97700," meaning pounds, had been changed in two places; that these changes were not explained, and that this was the only evidence showing the number of pounds on which plaintiff in error was paid on the first car. Even if it be conceded that the erasures should have been explained before the entries were admitted in evidence, their admission did not constitute reversible error. There was other competent evidence to establish this weight. A bill from Rotter-Speer & Co. to defendant in error dated May 24, 1920, was admitted in evidence showing a net weight of 97,700 pounds. A check dated June 9, 1920, from defendant in error to Rotter-Speer & Co. showed full payment of this bill, together with a check from Rotter-Speer & Co. to Feinberg & Kahn for the full amount. Plaintiff in error admitted payment to it on the basis of the weights received from defendant in error.

It is claimed by plaintiff in error that John D. Hiatt, the purchasing agent of defendant in error, produced certain documents which he said he got from the files of defendant in error and which he said were invoices which he received through the mail; that he checked these invoices with the book and sent them to the Cleveland office of defendant in error to be paid; that he produced certain canceled checks and testified that all he knew about them was that he saw them in court. It is insisted that these documents were necessarily based on other records; that there was no proof as to the true transactions they purported

to represent, the witness was not competent to make the proof, and they were records between defendant in error and third persons and should not have been admitted in evidence. The objection to these documents is general in its terms. It does not call attention to any particular document which it is claimed was erroneously admitted. In order to pass on this objection it would be necessary for this court to search the entire record and determine whether each document identified by the witness was properly identified in order to admit it in evidence. If any document was not properly identified it was the duty of plaintiff in error to specifically point out in what respect it was not properly identified. We have examined the record and find that several of the documents about which the witness testified were sufficiently identified by him to justify their admission in evidence. Some of them were identified by other witnesses. This was a trial before the court. The facts were determined by the Appellate Court. Even if some incompetent evidence was admitted, the admission of such evidence would not work a reversal of the judgment, provided that upon the whole record there was competent evidence fairly tending to support the judgment. There is no merit in the contention that some of these documents were records between defendant in error and third parties. They were records relative to this transaction, to which plaintiff in error was a party, and tended to support the claim of defendant in error.

Plaintiff in error insists that it was error to permit Thomas Moore, the employee of defendant in error who weighed the cars, to testify that he falsified these weights, that there was no evidence which connected plaintiff in error with a conspiracy to falsify weights, that the scales of the railroad company were shown to have been unreliable, that there is no other evidence to discredit the weights of defendant in error, and that it was error for the trial court to consider this evidence in determining which weights it

would adopt. In order for defendant in error to recover it was not necessary to prove that a conspiracy existed among its employees to falsify weights or that plaintiff in error was a party to such a conspiracy. The evidence as to a conspiracy was a mere incident of the proof. All that defendant in error was required to prove was that plaintiff in error, as the result of false weights, received money of defendant in error which it should not retain, together with proof as to the amount thereof. The evidence of Moore was competent to show that the weights made by the employees of defendant in error were not correct. If the weights made by its employees were discredited the burden was on defendant in error to prove what the true weights were. This it attempted to do by proving the weights made by the railroad company. Evidence was offered by plaintiff in error tending to show that the scales of the railroad company were not accurate. Evidence was offered by defendant in error to show that they were accurate. It was a question for the trial court to determine which evidence was the more worthy of belief. The court decided that the scales of the railroad company were correct, and that question is not open for review in this court.

Complaint is made that the court improperly admitted in evidence the three duplicate freight bills sent by the railroad company to plaintiff in error for the last three cars showing the railroad weights. Plaintiff in error was subpœnaed to produce its books and records relative to this transaction, which it failed to do, claiming that they had been destroyed. A similar claim was made by Feinberg & Kahn as to their books. The originals of these freight bills had been sent to plaintiff in error. They had notations on them as to the weights of these cars, showing 25700, 27900 and 32400 pounds, respectively. The duplicate bills were admissible because they showed the weights made by the railroad company, which were sent to plaintiff in error within forty-eight hours of each shipment. They were also

admissible in substantiation of the other railroad records showing the weights made by the railroad.

At the close of the evidence on behalf of defendant in error, plaintiff in error moved to strike from the record the exhibits and contracts between defendant in error and its brokers, upon the grounds that the pleadings alleged that defendant in error bought from plaintiff in error through brokers and paid plaintiff in error, through brokers, certain money which belonged to defendant in error, and there was a variance between the pleadings and the proof. We think the statement of claim was sufficient, under the pleadings required in the municipal court, to sustain the judgment, and the court properly overruled the motion.

Defendant in error has assigned cross-errors on the finding of the Appellate Court that it was not entitled to interest. The judgment of the Appellate Court was, that if defendant in error within ten days remitted from the judgment the sum of $383.30 interest the judgment would be affirmed for $2223.87, otherwise it would be reversed. Defendant in error entered the *remittitur* within the time and the judgment was affirmed. A party may acquiesce in an erroneous decision, and if he does so he has no cause to complain. (*People* v. *Buconich,* 277 Ill. 290.) Defendant in error was not required to remit unless it saw fit. It did remit and is now in no position to complain.

We find no reversible error, and the judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*