MORGAN GUARANTY TRUST COMPANY OF NEW YORK, a banking corporation, Plaintiff-Appellant,

v.

Dr. Robert E. MARTIN, Defendant-Appellee.

No. 71–1339.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1972.

Decided Aug. 15, 1972.

John B. Huck, Harry P. Lamberson, Stephen E. Kitchen, Chicago, Ill., Chapman & Cutler, Chicago, Ill., of counsel, for plaintiff-appellant.

I. Harvey Levinson, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, STEVENS, Circuit Judge, and ESCHBACH *, District Judge.

PER CURIAM.

The question presented by this case is whether the district court properly dismissed this action under Rule 19, Fed. R.Civ.P., which provides that an action may be dismissed if a person who cannot be joined is regarded as indispensable under the criteria set forth in the rule.

I.

In December 1967, defendant Martin bought $20,630 worth of stock through his broker, Smith, Barney & Co., Morgan Guaranty Trust Company, plaintiff herein, acted for Smith, Barney in transferring the stock and collecting payment. The stock was delivered through Martin's bank, Civic Center Bank, in Chicago. Payment was made by Civic Center through First National Bank of Chicago. First National wired Morgan to charge its account $20,630 and credit Civic Center. Morgan responded that Civic Center had no account with it, and First National then wired that the $20,630 should be paid to Smith, Barney for credit to the account

* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

of Martin. The money was so paid and credited and Morgan charged First National's account.

Several days later Morgan received another wire (hereafter referred to as the liquidation wire) from First National which referred to one of the earlier wires and which directed that $20,630 should be charged to its account and applied to liquidate the security drafts under the stock delivery and collection arrangement. Morgan, apparently without checking the earlier transaction, charged First National's account and liquidated the security drafts. When First National discovered that its account had been charged twice, it notified Morgan. Morgan corrected its mistake and immediately sought to recover the $20,630 which it paid to Martin through Smith, Barney. That money was the payment for the stock delivered to Martin by Morgan through Civic Center, and it should have been retained by Morgan in liquidation of the security drafts. Martin had already closed his account with Smith, Barney and had withdrawn the entire balance, including the $20,630. After other attempts to collect the money from Martin failed, Morgan filed this diversity action against Martin to recover the money.

■ Martin argues that he could not be obligated to Morgan because there was no privity of contract between him and Morgan. We are satisfied, however, as was the district court, that under Illinois law Morgan has stated a claim upon which relief can be granted.[1]

We need not detail here the various motions, renewed motions, orders, orders on reconsideration, and other documents in the record. It is sufficient to note that in its order of January 19, 1971 (reaffirmed on reconsideration, March

---

[1]. The district court's June 30, 1970, order, while it did not discuss the Illinois law, concluded:

"From a full and careful study of the various and numerous pleadings, briefs and motions filed in this suit on behalf of the parties, I conclude that there indeed is an action lying here for the return of money." Record p. C122, App. p. 58.

The Illinois law was thoroughly briefed in the district court. We have read the parties' submissions, have examined a number of Illinois cases, and are satisfied that a cause of action is stated. Morgan's action is, in terms of Illinois law, an action in assumpsit for money had and received by one party which in equity and in good conscience it has no right to retain. No privity of contract is required. See United States v. Alsip, 345 F.2d 365, 370 (7th Cir. 1965); National Malleable Castings Co. v. Iroquois Steel & Iron Co., 333 Ill. 588, 165 N.E. 199, 202–203 (1929); Board of Trustees v. Village of Glen Ellyn, 337 Ill.App. 183, 85 N.E. 2d 473, 479 (1949); Willens v. City of Northlake, 19 Ill.App.2d 316, 152 N.E. 2d 486, 487 (1958). Defendant Martin does not directly address this theory of action but rather argues that Morgan is attempting to recover a payment made, in which case recovery can be had only if the payment were made under a mistake of fact and not a mistake of law. Most of the cases on this issue concern a payment made either on demand, request, or at least with some expectation of receiving money. The two cases relied on by defendant Martin in the district court, Groves v. Farmers State Bank, 368 Ill. 35, 12 N.E.2d 618, 624 (1938), and Western & Southern Life Ins. Co. v. Brueggeman, 323 Ill.App. 173, 55 N.E.2d 719, 721–722 (1944), both referred to money voluntarily paid *under a claim of right to the payment*, with full knowledge of all the facts. Thus, where payment is demanded and voluntarily made, it cannot be recovered later because the law affording recovery is later interpreted to preclude recovery or because the payor, because of a mistake of law, thought he had an obligation to pay which he did not have. We have serious doubts whether these "recovery of payment" cases apply where money is paid to one who has no claim for it, has made no demand or request for it, and has no expectation of receiving it. Here the payment was a pure unexpected windfall. But even if this case must be analyzed as a recovery of a payment made under mistake of law or fact rather than as a "money had and received" case, we are satisfied that this payment was made under a mistake of fact and not of law and that plaintiff is therefore entitled to recover. See Salvati v. Streator Tp. High School, 51 Ill.App. 2d 1, 200 N.E.2d 122, 124 (1964); Willens v. City of Northlake, 19 Ill.App.2d 316, 152 N.E.2d 486 (1958).

15, 1971), the district court dismissed the action under Rule 19, Fed.R.Civ.P., on the ground that Smith, Barney was an "indispensable" party defendant who could not be joined because its joinder would divest the court of diversity jurisdiction.[2]

Plaintiff filed a motion for summary judgment and a renewed motion for summary judgment. Several affidavits were filed, including an affidavit of defendant Martin.

Martin admits receipt of the stock and does not deny that he received a sum equivalent to the $20,630 plus other credits in his account when he closed the account with Smith, Barney. He claims he dealt solely with Smith, Barney and never with Morgan, and that he had no knowledge that Morgan claimed any of the money in his account. He asserts that he had many transactions with Smith, Barney and that he had no way of knowing if the $20,630 he received was the same $20,630 paid by Morgan to Smith, Barney for credit to his account. He thus contends that he is liable, if at all, only to Smith, Barney and that Morgan, if it is to recover at all, must proceed against Smith, Barney. Martin does not offer any explanation for the $20,630, such as telling us of some other transaction that would explain this credit to his account. An affidavit of a vice president of Smith, Barney states that the payment received for credit to Martin's account was so credited and that when Martin closed his account it reflected only two transactions—the $20,630 credit and a $1,875 credit for a rescinded transaction. Martin, in fact, apparently admits that he is not entitled to the money because his argument that Smith, Barney is an indispensable party is based on the theory that (1) Smith, Barney might sue him for the $20,630 and (2) he could offset the $20,630 against what he claims Smith, Barney owes him—which he would seek in a counterclaim or cross-claim—as damages for securities law violations in connection with another transaction. Clearly, however, he could not reasonably assume that Smith, Barney miraculously paid him, without contest or even explanation, $20,630 toward a claim as yet unmade.

## II.

■ We turn now to rule 19, Fed.R.Civ.P.[3] Subdivision (b) of that rule

2. Both Morgan and Smith, Barney were New York citizens for diversity purposes. The court had earlier joined Smith, Barney on its own motion, but we view his later order as a vacation of the earlier joinder order and a dismissal for nonjoinder of an indispensable party.

3. Rule 19 provides in relevant part:
"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of re-

provides that if a person described in subdivision (a) (1)–(2) cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The factors to be considered in making that decision are set forth. Before it is necessary to consider those factors, however, it must first be determined if Smith, Barney is "a person as described in subdivision (a) (1)–(2)."

Subdivision (a) (1)–(2) provides that a person should be joined if:

"(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

The district court did not detail the reasons for his conclusion.[4] However, given the facts of the case and the contentions of defendant, it would appear that subdivision (a) (2) (ii) is the most relevant. In essence, defendant argues that he might be sued by Smith, Barney, and would therefore be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." We are unpersuaded.

Smith, Barney never indicated any interest in the $20,630 except to request that Martin return it either directly to Morgan or to Smith, Barney for transmittal to Morgan. The uncontradicted affidavit of a vice president of Smith, Barney establishes that the $20,630 was credited to Martin's account as directed.[5] Thus, Morgan could hardly sue Smith,

---

lief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

4. The court merely stated rule 19(b) conclusions in its January 19, 1971, order:

"8. A judgment rendered in this action in the absence of Smith, Barney as a defendant might be prejudicial to Martin, and no relief can be granted by this court which will avoid or lessen the prejudice that Martin may sustain in the absence of Smith, Barney as a party defendant, nor will a judgment entered in the absence of Smith, Barney as a party defendant be adequate.

"9. In the absence of Smith, Barney as a defendant, complete relief can not be accorded among those already parties to the action, and in equity and good conscience the action before the court should be dismissed for lack of jurisdiction since Smith, Barney is an indispensably party to this action, and the plaintiff has an adequate remedy, if the action is dismissed, in the Circuit Court of Cook County, Illinois, . . ."
Record, p. C170–171, App. p. 85.

5. The district court, in its June 30, 1970, order denying a motion for summary judgment, said it did not think the evidence in the record at that point adequately traced the money. The court concluded the affidavits of a Smith, Barney officer and two Morgan officers were not enough. The only indication the court gave of why they were not enough was as follows:

"It could well be that Smith, Barney alone owes the money to the Morgan Guaranty Bank and that the money was merely mistakenly credited to the account of Dr. Martin as a bookkeeping error. Furthermore, it is difficult to trace the money without introducing records showing that the money remained within Dr. Martin's account at Smith, Barney during the period between the allegedly mistaken crediting and the withdrawal." Record p. C122, App. p. 58.

However, there is no record support whatever for these doubts. The credit to Martin's account was not a "bookkeeping error." The instrument itself shows that it was paid for credit to Martin's account. And the affidavit of Mr. Bell, a vice president of Smith, Barney, clearly indicates that the money was credited to Martin's account and that the only transaction be-

Barney for following the instructions on Morgan's own instrument. And unless Smith, Barney repaid Morgan and was subrogated to Morgan's rights, Smith, Barney could hardly sue Martin. The $20,630 never "belonged" to Smith, Barney; it was transmitted to Smith, Barney only for credit to Martin's account. It would thus appear that there is no substantial risk that Martin would be subjected to a suit by Smith, Barney for the $20,630.

The risk is made even more remote by an additional factor. The record contains an affidavit by a vice president of Smith, Barney disclaiming any interest of Smith, Barney in the $20,630. The parties have argued before us the question whether this affidavit is a "judicial admission." We need not decide that question. Since the affidavit is uncontradicted, even if it is not a "judicial admission," it nevertheless provides persuasive support for the proposition that a successful suit—indeed, any suit at all —against Martin by Smith, Barney is highly unlikely. The rule requires a *substantial* risk of double liability. Both the Supreme Court and this court have emphasized that the analysis under the rule should be directed to the practical and not the theoretical.[6] We conclude that the affidavit, in the context of this entire record, forecloses any "substantial risk" that Martin will incur double liability if Smith, Barney is not made a party.

The only other claimed prejudice is that Martin's interest in recovering damages from Smith, Barney for securities law violations would be prejudiced if he has to sue Smith, Barney in a separate action and if he cannot retain the $20,630 which might give him a better bargaining position. It is obviously true that complete relief on all claims cannot be afforded as between Smith, Barney and Martin in this action if Smith, Barney is not a party. However, subdivision (a) (1) refers to relief as between those already parties not between a party and the absent person. It cannot seriously be contended that any time party A has a dispute with person B he can litigate that dispute in a case pending between A and C merely because that procedure might be more convenient than suing B in a separate lawsuit. And he certainly is not entitled to retain $20,000 of C's money just so he will be in a better position to bargain with B. Martin's position is unconscionable.

Finally, subdivision (a) (2) (i) does not apply since it refers to the absent person's ability to protect his interest. Smith, Barney not only does not claim any inability to protect its interest; it specifically disclaims any interest.

Since Smith, Barney was not a "person as described in subdivision (a) (1)– (2)," it was an abuse of discretion for the district court to have dismissed the action under Rule 19(b).[7]

---

tween the time of the credit and the time of the withdrawal was another credit for $1,875 for a rescinded transaction. Martin offers no contrary explanation whatever.

6. *Cf.* Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 106–107, 110, 88 S.Ct. 733, 19 L.Ed.2d 936; Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co., 417 F.2d 1113, 1115 (7th Cir. 1969). While these cases, as well as Schutten v. Shell Oil Co., 421 F.2d 869, 874 (5th Cir. 1970), dealt specifically with subdivision (b) of the rule, the reasoning applies as well to subdivision (a). The "as a practical matter" language itself is found in subdivision (a) (2) (i). See

*Provident Tradesmens, supra,* 390 U.S. at 110, 88 S.Ct. 733. If nothing else, this pragmatic approach requires that "substantial" be construed according to its ordinary meaning.

7. Even if we assume that subsection (b) is properly considered, there is no support in the record for the district court's conclusions quoted in note 4, *supra.* Rule 19(b) provides:

"The factors to be considered by the court include: first, to what extent a a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice

Martin also argues, for the first time on this appeal, that it was First National and not Morgan that sustained the loss and that First National is therefore an indispensable party whose absence justifies dismissal. We find no merit in this belated contention.[8]

### III.

We turn now to plaintiff's request that we direct the district court to enter summary judgment in its favor. Defendant Martin argues that the denial of a motion for summary judgment is interlocutory in nature and therefore unappealable. Thus, he argues that the district court's order denying summary judgment is not before us for review and that we therefore cannot grant summary judgment but must remand the case for trial. We reject this contention.

■ Whether or not the order denying summary judgment is itself before us,[9] it is clear that the case is lawfully

---

can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

As to the prejudice under the first factor, we have already indicated in our discussion of subdivision (a) that, "as a practical matter," see Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936, neither defendant nor Smith, Barney will suffer any prejudice cognizable under this rule. As to the second factor, even if there had been a risk of liability to Smith, Barney, the court nevertheless failed to consider that it might well have protected Martin by providing in the judgment that Morgan recover only on condition it save Martin harmless from any claim to the $20,630 which might be made by Smith, Barney. The Supreme Court has said that "adequacy," the third factor, refers to the "interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Id.* at 111, 88 S.Ct. at 739. It is "this public stake in settling disputes by wholes, whenever possible," *Ibid.*, we must consider. As we have already indicated, the "whole" controversy can be settled in this case without Smith, Barney as a party. Although the securities law claim against Smith, Barney could not be litigated herein, that is a separate controversy which depends on completely independent facts. The "efficient settlement of controversies" certainly would not be fostered by having that independent question litigated in this simple unjust enrichment case. The fourth factor is whether plaintiff will have an adequate remedy if the action is dismissed. The district court found he would have an adequate state remedy. In our opinion, however, this single factor is no justification for denying plaintiff his right to sue in a federal court when no other factor gives any support whatever to such a denial.

8. Although both banks would appear to have contributed to the confusion regarding the first two wires, we can assume that, had the transaction stopped there, Morgan might still have been able to collect on the security drafts on the grounds that it merely followed instructions on the payment to Martin. However, it was Morgan who failed to check the reference in the liquidation wire to one of the earlier wires. Had Morgan checked, presumably the earlier mistake would have been discovered at that time— which would probably have been soon enough to recover the money before Martin had closed his account with Smith, Barney. Morgan, however, without checking, charged the account of First National a second time and liquidated the drafts. Morgan, quite properly, took responsibility for the mistake and corrected it. Since the drafts had also been liquidated as a result of Morgan's error, it was Morgan that was out the $20,630. Our conclusion is reinforced by the recognition that a bank—a "for-profit" organization—is not likely to forego the use of $20,000 for an extended period (in this case, already four and one-half years) merely so it can file a diversity action to recover the money. If Morgan had a legal claim against First National, we assume Morgan would have asserted it and left First National to its state court remedies.

9. We believe, though it is not necessary for our decision, that the order itself is properly before us because interlocutory orders are merged into a final judgment. As Professor Moore, on whom both parties rely, has written:

"[T]he trial court's rulings . . . denying summary judgment . . . are non-appealable and generally subject to review only on appeal after the entry of a judgment terminating the action,

before us on appeal from the dismissal order. Section 2106 of Title 28, U.S.C. provides:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, *and may remand the cause and direct the entry of such appropriate judgment, decree, or order,* or require such further proceedings to be had *as may be just under the circumstances.*" (Emphasis added.)

The District of Columbia Circuit has observed that this section grants this court "broad discretion in the disposition of a case on appeal." Kosty v. Lewis, 115 U.S.App.D.C. 343, 319 F.2d 744, 749 (1963), cert. denied, 375 U.S. 964, 84 S. Ct. 482, 11 L.Ed.2d 414. While it would seldom be appropriate for an appellate court to direct the entry of summary judgment, since such a determination is in most instances best left to the discretion of the trial judge, we believe this section makes it clear that we have the power to do so when it would be "just under the circumstances." *Cf.* Forman v. United States, 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412.

In this case, a motion and a renewed motion for summary judgment were made. Both sides presented affidavits on the issue. Thus, this is not a case in which no motion was made at the trial level or in which the opponent of the motion did not have an opportunity to respond.[10] This is not a complex case; it is a simple case with simple facts. We have reviewed the record and have concluded that there is no genuine issue of material fact which should be tried.[11] It would be a waste of judicial resources to remand this case for trial.

Accordingly, we think that it is "just under the circumstances" for this court to remand with directions that the district court enter summary judgment for plaintiff. Interest shall be allowed from November 18, 1968.[12] It is so ordered.

Reversed and remanded with directions.

---

into which the interlocutory rulings are merged." 9 Moore's Federal Practice, ¶ 110.07 at pp. 108–109. *Cf.* Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 258, 36 S.Ct. 269, 60 L.Ed. 629; Edwin Raphael Co. v. Maharam Fabrics Corp., 283 F.2d 310, 311 (7th Cir. 1960). *Cf.* also Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 588–589, 46 S.Ct. 408, 70 L.Ed. 747; Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145, 147 (1969); Davenport v. Proctor & Gamble Mfg. Co., 241 F.2d 511, 513 (2d Cir. 1957).

10. The Supreme Court's decision in Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971, is therefore inapposite.

11. As we pointed out in note 5, *supra,* there is no record support for the concern expressed by the district court that questions as to "tracing" or "bookkeeping error" preclude summary judgment.

12. The parties do not dispute the proposition that interest is allowable from the date of demand. Smith, Barney wrote to Martin on July 10, 1968, notifying him of the error and requesting repayment to Morgan or to Smith, Barney for Morgan's benefit. Martin does not deny receipt of the demand letter, but we cannot ascertain the date of receipt from the record. In his uncontradicted affidavit, Mr. Vislocky of Morgan Guaranty states that he personally called Dr. Martin on November 18, 1968, and requested return of the money. Although it would thus appear that an issue of fact exists as to the date of demand, we accept Morgan's invitation to finally determine this controversy. Accordingly, affording Martin the most liberal interpretation of the demand date justified by the record, we direct that interest shall run from November 18, 1968.