United States Court of Appeals,

Eleventh Circuit.

Nos. 95-4388, 95-4975.

Robert K. FABRIC, M.D., Robert K. Fabric, M.D., P.A., a Florida Professional Association, Plaintiffs-Appellees,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, a Tennessee Corporation authorized to do business in the State of Florida, Defendant-Appellant.

June 24, 1997.

Appeals from the United States District Court for the Southern District of Florida. (No. 93-6333 CIV-JAG), Jose A. Gonzalez, Jr., Judge.

Before TJOFLAT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

This is a removed diversity case brought by Dr. Robert K. Fabric and his professional association against Provident Life and Accident Insurance Company, which had issued disability insurance policies providing for payment of business expense if Dr. Fabric became disabled. Fabric did become disabled, and Provident made monthly payments amounting to $10,000 per month for twenty-four months. Two years after payments ceased Fabric filed this suit, claiming that he had been entitled to $20,000 per month. Provident asserted affirmative defenses including accord and satisfaction, rescission, waiver and estoppel. The district court granted summary judgment for Fabric, denying all of Provident's defenses. We REVERSE and DIRECT that summary judgement be entered for Provident.

In July 1983 Provident issued to Dr. Fabric an overhead expense disability insurance policy providing that if he became disabled it would pay covered expenses incurred in the operation of his business or profession up to $10,000 per month for twenty-four months. In December 1987 Fabric applied to Provident for additional business expense coverage of $10,000 per month in the event he became disabled. In March 1988 Provident issued a new policy that provided for payment of up to $20,000 per month for twenty-four months. The new policy stated "this policy is issued in lieu of and replaces policy number 6-BE-571223, dated July 25, 1983."

The December 1987 application required Fabric to state whether he had or was applying for other disability income coverage or overhead expense disability coverage. He responded by giving information on two individual disability policies that had been issued by Provident (that is, with benefits payable to Fabric but unrelated to his business expense), and the 1983 policy issued by Provident. He did not reveal disability policies issued by two other companies, Monarch Life and MGIS, that provided for benefits of approximately $11,500 per month.

In February 1989 Fabric became disabled. His disabled status is not disputed. In March 1989 he submitted to Provident through his attorney, Leslie Zuckerman, a single notice of claim asserting benefits under Provident's two individual policies and the March 1988 overhead expense policy.[1] In an accompanying letter Zuckerman stated that Fabric desired that future correspondence regarding the claim be through Zuckerman's office.

In June 1989 Provident made an initial payment under the 1983 policy of some $28,000.[2] However, in reviewing Fabric's status Provident discovered other disability insurance coverage that had not been revealed in the December 1989 application. It commenced an investigation to determine whether pursuant to its underwriting guidelines it would have issued the 1988 policy had it known of the undisclosed insurance. In July 1989 Provident notified Fabric's attorney that until the matter was resolved it would pay Fabric the $10,000 per month benefit that Fabric would be entitled to under the 1983 policy if it had not been replaced by the 1988 policy, and it continued to make such monthly payments.

After full investigation and review Provident concluded that, counting the undisclosed coverage, Fabric was grossly overinsured. It notified Fabric's attorney that it would not have issued the 1988 policy had it known of the non-disclosed policies because the total insurance already in force at the time of the December application exceeded the limits of the coverage it would write.

---

[1] There is no dispute concerning the two individual disability policies. Claims under them have been regularly paid.

[2] $10,000 per month was the maximum for covered business expense. Expenses varied from month to month, but it is undisputed that, over the span of payments, Provident paid the maximum benefits under the 1983 policy.

On November 29, 1989 Provident wrote Zuckerman:

> Our Underwriting Department has reviewed the information concerning Dr. Fabric's disability coverage with us and other carriers. The amount of disability insurance in force exceeds the limits of coverage we would have been willing to issue.

> The 12/14/87 application for overhead coverage did not contain the complete outline of disability insurance coverage in force at the time. Had our Underwriting Department been aware of the extent of disability coverage in force the 12/14/87 application would not have been approved and no additional overhead expense coverage would have been issued. Again the reason being that Dr. Fabric's coverage already in force at the time of the 12/14/87 application exceeded our Underwriting approval limits. This rule applies to both overhead and disability income coverage as well.

> Our only choice was to reissue Policy # 06 BE 571223 [the 1983 policy] which we have enclosed.... Should you have any questions concerning this please do not hesitate to contact us. (bracketed material added).

In January 1990 Provident sent to Fabric a check for $939 with a reference that it was unearned premium on the 1983 policy. Fabric's office inquired about the check, and Provident wrote that it represented the difference between the premiums for the 1988 policy and the 1983 policy. Fabric did not respond and never cashed the check. He made no response to Provident's reissuance of the 1983 policy. However, after the November notification letter was received, he filed a claim form each month that detailed his expenses and listed the policy numbers of the two individual policies and of the 1988 policy.

For sixteen months following Provident's November 29 notification letter to Fabric, Provident continued to make monthly payments that totaled $160,000, that is, until $240,000, the extent of the benefits under the 1983 policy, had been paid. Each of these checks was cashed by Fabric without comment or protest. The last check, issued March 14, 1991, recited that it was "FULL settlement of claim originating on or about February 3, 1989" (the date on which Fabric claimed to have become disabled). It also said: "This is a full and final payment as you have received the maximum allowance under this contract," and it listed the policy number of the 1983 policy. The check was accompanied by a letter stating that a "final check" on the 1983 policy was enclosed. This check too was cashed without comment. Two years passed without further demand or inquiry by Fabric, then Fabric filed this suit seeking additional benefits of $10,000 per month for twenty-four months.

Provident's counsel was also retained by Monarch Life, one of the companies with which Fabric had an undisclosed disability policy. Monarch had challenged the validity of its policy because in his application to it (made before Provident's November 1989 letter) Fabric had not disclosed the 1988 Provident policy. According to Provident/Monarch counsel, in pursuing the dispute between Fabric and Monarch he became aware, after the summary judgment decision was entered in this case, of a letter previously unknown to Provident, that had been written to Monarch by Zuckerman. On September 15, 1989 Zuckerman had written Monarch:

> As I indicated to you in our meeting, *Provident Life & Accident has rescinded their policy effective February 1, 1988. Since the rescission relates back to the effective date, Dr. Fabric was never covered under Provident's disability policy other than the original policy in the amount of $10,000.00.* ... Provident's $10,000.00 of additional overhead reimbursement was effectively never issued by Provident....

(Emphasis added). Provident moved the court to reconsider the summary judgment decision against it because of the acknowledgments in the letter. The court denied the motion on the ground the letter was irrelevant. This was error. Fabric and Zuckerman agree that Zuckerman was authorized to act for Fabric in dealings with Provident. The statements by Zuckerman in the letter were admissions against Fabric's interest, highly relevant to Provident's defense, whether specifically authorized by Fabric or within the attorney's actual or apparent authority.

Fabric argues to this court that Zuckerman's letter could not constitute an admission that Provident had rescinded any obligation to pay the second $10,000 per month because it was written September 15, 1989 and Provident's letter of notification was not written until November 30. But before he wrote his letter of September 15 Zuckerman had been negotiating with Provident and had sought information concerning Provident's right to rescind based on its underwriting policies. It is astonishing to us that Fabric should contend that representations to Monarch by his authorized attorney, made in pursuit of Fabric's interests with Monarch but describing Fabric's relations with Provident (conducted through that same attorney), were not binding upon him because the attorney could not have known whether what he represented as truth was actually true.

We turn to the Florida law. By statute existent at the time of relevant events of this case Florida provided that misrepresentations or incorrect statements would not prevent a recovery under

an insurance policy unless either:

"(a) Fraudulent;  or

"(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer;  or

"(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

See Historical note to Fla.Stat.Ann. § 627.409 (1996), which set out the pre-1992 language of this section.

A host of cases recognize that the insurer is not liable on a policy where the requirements of the Florida statute exist.  *E.g., First Nat'l Bank Holding Co. v. Fidelity & Deposit Co. of Maryland,* 885 F.Supp. 1533 (N.D.Fla.1995).  See also, Ann. to § 627.409.  In this case, as in *National Union Fire Ins. Co. v. Sahlen,* 999 F.2d 1532 (11th Cir.1993), it is obvious that the misrepresentations in Fabric's application affected the risks assumed by Provident and, under the undisputed evidence, Provident would not have assumed responsibility for an additional $10,000 per month had it known of the undisclosed policies.

Where a misrepresentation occurs that meets the requirements of § 627.409 the insurer, as a matter of right, may unilaterally rescind.  *Pino v. Union Bankers Ins. Co.,* 627 So.2d 535 (Fla.Dist.Ct.App.1993).  *Pino* points out that this is consistent with *Restatement (Second) of Contracts* § 7 and illus. 2 (1981).[3]

The misrepresentation need not be fraudulently or knowingly made but need only affect the

---

[3]§ 7.  Voidable Contracts

> A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.

> Illustrations:

> 2. A, by fraud, induces B to make a promise to pay A money in consideration of goods delivered by A to B.  There is a contract, but the fraudulent representations of A give B a power to avoid by tendering back to A within a reasonable time the goods received from him.

insurer's risk or be a fact which, if known, would have caused the insurer not to issue the policy or not to issue it in so large an amount. *First Nat'l Bank Holding Co.,* supra; *Old Southern Life Ins. Co. v. Kirby,* 522 So.2d 424 (Fla.Dist.Ct.App.1988).

Where the party who has been misled has the right to rescind no consent by the opposing party is needed. *Pino,* supra. A material misstatement provides a basis for rescission even if the applicant could not have known of its inadequacy. *William Penn Life Insurance Co. of New York v. Sands,* 912 F.2d 1359 (11th Cir.1990); *Preferred Risk Life Ins. Co. v. Sande,* 421 So.2d 566 (Fla.Dist.Ct.App.1982). Fabric asserts that he told the insurance agent of all of his insurance but the agent failed to list the undisclosed policies on the Provident application. If accepted as true, this does not vitiate Provident's rights. *First Nat'l Bank Holding Co.,* supra.

Apart from the right to unilaterally rescind, both parties may bilaterally agree to rescission (at times referred to in Florida cases as a type of accord and satisfaction). Also, where misrepresentation occurs that meets the requirements of § 627.409 the insurer may assert this as a defense to enforcement of the policy.

The district court observed that Provident had not urged unilateral rescission. Nevertheless, it went on to address unilateral rescission and held that Provident's November 29 letter and its subsequent actions, including refund of the difference in premiums, did not constitute a clear manifestation by Provident of an election to unilaterally rescind but rather constituted an effort to restore the status of matters as they would have been absent the December 1987 application with its misrepresentations. The court erred. It correctly described the events but misunderstood the consequences. Provident did not seek to rescind its initial obligation to pay $10,000 per month, and it has faithfully performed that obligation. What Provident rescinded was agreement on its part to extend an additional coverage of $10,000 per month; that is what the misrepresentation related to. Provident's actions thereafter were consistent with its unilateral rescission of any obligation to pay a second $10,000 per month. It sent a refund of the additional premium. Each check previously issued had referred to the 1988 policy. Each subsequent check referred to the 1983 policy. The final payment and accompanying letter referred to payment in full of the 1983 contract benefits and full

payment of Fabric's disability claim.

The theory that runs through Fabric's case is that Provident could not rescind the obligation for the second $10,000 per month unless Fabric agreed (and it asserts that he never agreed) or Provident filed suit and obtained a judicial determination that Provident had rescinded. As evidence of his non-acquiescence Fabric relies on the fact that after Provident had notified him that it would not be responsible for the second $10,000 per month he sent in a single claim form each month, reciting the policy numbers of the two individual policies and of the 1988 policy. But Fabric's consent to unilateral rescission was not required. His post-rescission indication of non-acquiescence does not vitiate the rescission. As a matter of law Provident unilaterally rescinded.

While not necessary to consummate a unilateral rescission, as already pointed out Provident's actions thereafter were consistent with the fact that it had rescinded its undertaking to pay an additional $10,000 per month. On Fabric's part, other than listing the 1988 policy number on each monthly claim, his conduct was consistent with non-existence of a second $10,000 of coverage. He never responded to the notification letter. He did not cash the premium refund check, but he never returned it. His attorney represented to Monarch that Provident had rescinded. Fabric accepted and cashed each monthly check including the final check tendered as payment in full, and for two years thereafter stood mute. Even then he asserted no demand but just sued.

The sole case relied on by the district court was *Pino.* That case does not control. Pino obtained a health insurance policy from the insurer, and, a year and a half later, applied for reimbursement of medical bills. In response the insurer sent a four-sentence letter stating that it had learned that the medical facts on Pino's application were not complete and had it known the complete history it wouldn't have issued the policy. And it sent a check refunding premiums. Pino sued. The trial court entered summary judgment for the insurer.

The DCA reversed. It recognized that where the insured has made a fraudulent misrepresentation the defrauded party has the unilateral right to rescind without consent by the opposing party. It construed the insurer's action—directed to "a hapless insured," "an uninformed and unsophisticated insured" without counsel—as a mere effort to repudiate and insufficient to

establish rescission by accord and satisfaction. The court intermingled discussion of repudiation, unilateral rescission and bilateral rescission (accord and satisfaction). The insurer's letter came nowhere close to meeting the requirements of § 627.409 that might justify unilateral rescission. The alleged misrepresentation, omission or concealment of facts was not identified other than a one-sentence assertion that the medical history was incomplete. What information was allegedly omitted, and its import, were unrevealed. Other than the insurer's one-sentence statement, nothing tended to support the requirement that the insurer would not have issued the policy had it known the true facts. There was only one claim and one check, compared with the present case where the claims were ongoing and rescission occurred after the insurer gave notice of its grounds and engaged in negotiations orchestrated by Fabric's attorney that fully revealed its basis for rescission.

Understandably, in *Pino* the DCA held that summary judgment for the insurer was inappropriate. It remanded for a trial at which "the insurance company will be able to demonstrate that it has good grounds for a judicial rescission of this insurance policy."

Under the facts of this case, even if there had been no unilateral rescission when Provident notified Fabric it was rescinding, as a matter of law there was a subsequent rescission by accord and satisfaction. Where a party cashes a check but protests that additional payment is necessary to fully satisfy the alleged debt, accord and satisfaction operates to bar that party's claim for further payment. *Burke Co. v. Hilton Devel. Co.,* 802 F.Supp. 434 (N.D.Fla.1992); *Miller-Dunn Co., Inc. v. Green,* 154 Fla. 72, 16 So.2d 637 (1944) (where a party cashes a check but protests that additional payment is necessary to fully satisfy the alleged debt, accord and satisfaction operates to bar that party's claim for further payment). Fabric's monthly notation of the 1988 policy number is a slender reed but, assuming it served to keep the dispute alive, the bell rang when, after sixteen months (if not sooner) Provident tendered the last check as payment in full of the 1983 policy and of Fabric's claim, and Fabric accepted and cashed the check and stood mute thereafter.

In this court Provident has not asserted a right to summary judgment. But, as we have noted, the district court addressed and rejected unilateral rescission and accord and satisfaction and the parties on appeal have fully briefed the issues. This is a slam dunk case whether based on unilateral

rescission or rescission by agreement (accord and satisfaction).  The power of an appellate court to order summary judgment for a party who did not move for it in the district court has been widely recognized by circuit courts and other authorities, including our predecessor, the Fifth Circuit, in a decision binding on us.  *Black Warrior Elec. Membership Corp. v. Miss. Power Co.,* 413 F.2d 1221, 1226 (5th Cir.1969);  *see, e.g., Dickeson v. Quarberg,* 844 F.2d 1435, 1444, n. 8 (10th Cir.1988); *Martinez v. U.S.,* 669 F.2d 568, 570 (9th Cir.1981);  *Morgan Guar. Trust Co. v. Martin,* 466 F.2d 593, 600 (7th Cir.1972);  *Garner v. Memphis Police Dept.,* 8 F.3d 358, 366 (6th Cir.1993);  *In re Continental Airlines,* 981 F.2d 1450, 1458-59 (5th Cir.1993);  *Uzzell v. Friday,* 547 F.2d 801, 805 (4th Cir.1977), *vacated on other grounds,* 438 U.S. 912, 98 S.Ct. 3139, 57 L.Ed.2d 1158 (1978); *Viger v. Commercial Ins. Co.,* 707 F.2d 769, 774 (3rd Cir.1983);  *Procter & Gamble Indep. Union v. Procter & Gamble,* 312 F.2d 181 (2nd Cir.1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963);  *First Nat'l Bank v. Maryland Cas. Co.,* 290 F.2d 246, 251 (2nd Cir.1961); *Mullen v. St. Paul Fire & Marine Ins. Co.,* 972 F.2d 446 (1st Cir.1992).

Summary judgment in favor of a non-moving party has become an accepted method for an appellate court to expedite litigation.  *Morgan Guar. Trust Co.,* 466 F.2d at 600.  There the court found that its grant of summary judgment to a non-movant was "just under the circumstances" in light of a fully developed factual record and was consistent with 28 U.S.C. § 2106.  That section provides:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

Professor Moore explains that an appellate court may properly grant summary judgment for the non-moving party as long as all facts bearing on the issue in question are before the court and establish that the non-movant is entitled to judgment as a matter of law.  6 James Wm. Moore et al., Moore's Federal Practice ¶ 56.12;  *see also* 10 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2716 (2d ed. 1983).

If a party did not have an opportunity to present his side of a dispute, granting summary

judgment for a non-moving party would be improper. *E.g., Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949) (the circuit court improperly ordered summary judgment on a new issue for the non-moving plaintiff where his opponent was deprived of an opportunity to dispute facts relevant to the issue). However, *Fountain* does not apply here. Facts relevant to the issues of rescission and accord and satisfaction were fully developed in the district court. Fabric had a fair opportunity to dispute and did present facts pertinent to the issue. The district court addressed and relied on both rescission and accord and satisfaction. Directing summary judgment for Provident on appeal does not result in procedural prejudice to Fabric.

In *Latecoere Int'l., Inc. v. U.S. Department of Navy.* 19 F.3d 1342 (11th Cir.1994), this court declined to order summary judgment for the appellee who had not asked it of the district court. Its decision was based, however, on the circumstances of the case and the fear that the appellant might be deprived of an opportunity to fairly present its side of the dispute. That consideration is not present here, where the contentions of the parties are clearly drawn and the record is full and adequate. Additionally, *Latecoere* noted that it was unable to find any Eleventh Circuit case in which the power of the court to enter summary judgment for a non-requesting appellant had been exercised. However, it overlooked *Black Warrior Elec. Membership Corp. v. Mississippi Power Co.,* where the power was exercised.

REVERSED and REMANDED with instructions to enter summary judgment for Provident.