**FIRST NATIONAL BANK HOLDING COMPANY, Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.**

No. 93–30093–RV.

United States District Court, N.D. Florida, Pensacola Division.

March 15, 1995.

David L. Fleming, David L. Fleming P.A., Gulf Breeze, FL, for First Nat. Bank Holding Co.

Charles M. Harrell, Wilson, Harrell & Smith, P.A., Pensacola, FL, for Fidelity & Deposit Co. of Maryland.

## ORDER

VINSON, District Judge.

Pending is the second motion of defendant Fidelity and Deposit Company of Maryland for summary judgment. (Doc. 41). As discussed below, the motion is GRANTED.

## I. MATERIAL FACTS AND PROCEDURAL BACKGROUND

The complex factual and procedural history of this case is set forth in my order of February 9, 1994, and need not be repeated. I add only some additional facts material to the second motion for summary judgment, which are undisputed in the record. At all times material to this case, First National Bank of Escambia County ("First National Bank") was a wholly owned subsidiary of First National Bank Holding Company ("FNBHC"). FNBHC's sole asset was the stock of First National Bank. Louis R. Jernagan was president and chairman of the board of the First National Bank, as well as the controlling stockholder, president, and chief executive officer of FNBHC.

During 1984 and 1985 Jernagan engaged in an elaborate fraudulent scheme. As part of the scheme, Jernagan made loans in the names of third parties, knowing that in reality the loans were to Joseph Urquhart. By utilizing this artifice, Jernagan was able to permit Urquhart's total indebtedness to First National Bank to far exceed the legal limit for one borrower. In September 1985, the Comptroller of the Currency uncovered this scheme. In 1986, a grand jury of this court returned a forty-five count indictment, charging Jernagan with numerous violations of the banking code (*United States of America v. Jernagan*, Case Number 86–00464–01–WS). As the case was going to trial, and after a jury had been selected, Jernagan decided to plead guilty to five counts in the indictment. Pursuant to a plea agreement, Jernagan pled guilty to the charge of conspiracy to commit bank fraud, to two counts of bank fraud, to the charge of making a false statement on bank documents, and to a charge of violating the currency transaction reporting requirements. Chief Judge William Stafford of this court later sentenced Jernagan, and as part of the sentencing determinations, found that First National Bank had suffered losses of $751,176.86 as a result of Jernagan's criminal activities. He ordered restitution to the bank in that amount as part of Jernagan's sentence.

Defendant Fidelity and Deposit Company of Maryland ("F & D") issued a directors' and officers' liability insurance policy (Policy Number DOB 6086137), effective March 31, 1985, to FNBHC. As set forth in my order of February 9, 1994, the policy insured (a) the directors and officers of the Bank for any liability arising from their collective or individual "wrongful acts," unless the Bank indemnified such directors and officers, and (b) the Bank for any amounts it indemnified its officers and directors for claims made against them for their collective or individual "wrongful acts." [1] However, the policy explicitly excludes claims "brought about or contributed to by the dishonesty of the Directors and Officers."

As a result of his conduct, Jernagan was named as a defendant in five civil actions, including *First National Bank Holding Co. v. Jernagan,* Case Number 85–4429–RV, Northern District of Florida ("*FNBHC v. Jernagan*"). After Jernagan demanded that F & D provide a defense in the various suits, the insurance company filed suit (*Fidelity and Deposit Co. of Md. v. Jernagan,* Case Number 87–30080–WS) ("F & D v. Jernagan"), seeking, *inter alia,* a declaratory judgment that it had no duty to defend Jernagan, and that the policy of insurance was void with respect to Jernagan. After Jernagan defaulted, on July 20, 1987, Chief Judge William Stafford of this court entered an amended judgment in *F & D v. Jernagan,* declaring the insurance policy null and void *ab initio* with respect to Jernagan.[2] Jernagan also

---

**1.** The policy lists FNBHC as "the Bank."

**2.** The Eleventh Circuit Court of Appeals affirmed the decision in an unpublished opinion. No. 87–3497, 853 F.2d 928 (11th Cir. June 30, 1988).

defaulted in *FNBHC v. Jernagan,* and a jury trial was held, without any appearance by the defense, solely on the issue of damages. The jury returned a verdict for FNBHC in the amount of $3,188,400.00.

Subsequently, FNBHC demanded the policy limits of one million dollars from F & D. When F & D denied coverage, FNBHC commenced this action in state court on January 25, 1993, alleging bad faith, and demanding $3,188,400.00 (the amount of the judgment) from F & D. The defendant timely removed the case to this court, and it is still pending.

## II. ANALYSIS

### A. *Summary Judgment Standard.*

The standard for granting summary judgment is set forth in my order of February 9, 1994, and is incorporated herein.

### B. *Fraud in the Application.*

The substantive law of Florida governs this diversity action. *William Penn Life Ins. Co. of New York v. Sands,* 912 F.2d 1359, 1361 (11th Cir.1990). The defendant's present motion for summary judgment raises a number of grounds for finding the subject insurance policy invalid. Primarily, it challenges the application for insurance submitted by Jernagan on behalf of the bank. Section 627.409(1), Florida Statutes Annotated (Supp.1984), states: [3]

627.409. Representations in applications; warranties

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of fact, or incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

■ The application for insurance is a critical part of the insurance agreement. It provides the basis for the underwriting of the coverage to be provided by the insurance company. "An insurer is entitled, as a matter of law, to rely upon the accuracy of information contained in the application and has no duty to make additional inquiry." *Independent Fire Ins. Co. v. Arvidson,* 604 So.2d 854, 856 (Fla. 4th DCA 1992), *rev. denied,* 617 So.2d 318 (Fla.1993). "There is no scienter requirement in the statute; even an unintentional misstatement will prevent recovery if it materially affects the risk or if the insurer would have altered the policy's terms had it known the true facts." *Life Ins. Co. of North America v. Cichowlas,* 19 Fla. Law W.D. 2447, —— So.2d ——, ——–——, [1994 WL 655636], 1994 Fla.App. LEXIS 11312, *4–5 (Fla. 4th DCA 1994). *See also Disposable Services, Inc. v. ITT Life Ins. Co. of N.Y.,* 453 F.2d 218 (5th Cir.1971); *Life Ins. Co. v. Shifflet,* 201 So.2d 715 (Fla.1967); *Motors Insurance Co. v. Marino,* 623 So.2d 814 (Fla. 3rd DCA 1993). When an insurer was induced to enter an insurance contract by fraud, the defrauded insurer may avoid the contract as of right. *National Union Fire Ins. Co. v. Sahlen,* 999 F.2d 1532 (11th Cir.1993); *Continental Assurance Co. v. Carroll,* 485 So.2d 406, 409 (Fla.1986).

On February 19, 1985, as part of the application process for the policy at issue, Jernagan signed a proposal form. (*See* Ex. 19 to attachments to doc. 41). The proposal form identified the "name of bank" as "First National Bank Holding Corporation D/B/A First

---

**3.** In 1992, the Florida legislature rewrote Section 627.409, making minor changes in wording. I have cited the 1984 statute in effect at the time the proposal form was executed. The later version in effect at the time this lawsuit was filed is not materially different.

National Bank of Escambia County." Question 11 of the proposal asked:

> Does any Director or Officer of the Bank or any of its Subsidiaries have knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy? Yes ___ No ___ If yes, provide details:

Jernagan answered "no" to this question. Jernagan executed a second proposal form on May 6, 1985, in which he once again answered the same question in the same manner.

F & D asserts that Jernagan's answer was false, and that the policy at issue in this case would not have been issued, or would have been issued under different terms, had Jernagan truthfully answered the question. In support of the motion, F & D has filed the affidavit of Nelson Brown, III, an underwriter in F & D's New Orleans branch. Brown states that had Jernagan truthfully answered the question, F & D, at the least, would have issued the policy at a different premium, and might not have issued it at all. Although FNBHC has not explicitly admitted the materiality of Jernagan's answer to Question 11, it has not filed any evidence to rebut Brown's affidavit. Therefore, it is uncontradicted in the record that Jernagan's omission was material.

The plaintiff asserts two alternate bases for its contention that, despite Jernagan's false answers on the proposal forms, the policy is still valid. First, the plaintiff relies upon the capacity in which Jernagan signed the two proposal forms. FNBHC contends that it is seeking reimbursement for the holding company, not for the bank. The plaintiff notes that Jernagan signed the first proposal on February 19, 1985, as president of First National Bank. Thereafter, F & D issued the policy to become effective on March 31. Then on May 6, 1985, Jernagan signed a second proposal as president of the holding company. FNBHC argues that F & D could not have relied on the May 6 proposal. The plaintiff contends that Jernagan only mislead the insurer on behalf of First National Bank, but not on behalf of FNBHC.

■ If F & D had issued separate policies to the bank and the holding company,

FNBHC's argument might have merit. However, there was only one policy issued, and it is undisputed that the policy was issued in reliance on the proposal form signed by Jernagan on February 19, 1985. The plain language of the statute allows an insurer to avoid the contract if a fraudulent or material misrepresentation was made "by or in behalf of the insured." Material misstatements in the application by someone other than the insured (even if unintentional), void the policy. *Continental Assurance Co. v. Carroll,* 485 So.2d 406 (Fla.1986); *Preferred Risk Life Ins. Co. v. Sande,* 421 So.2d 566 (Fla. 5th DCA 1982). Jernagan signed the proposal form as part of FNBHC's application for the insurance. It specifically recites "First National Bank Holding Corporation D/B/A First National Bank of Escambia County." Jernagan was acting "in behalf of" FNBHC. The capacity in which he executed the February 19 proposal is irrelevant. It is undisputed that if he had answered truthfully, F & D would not have issued on the same terms the policy upon which the plaintiff is suing.

The plaintiff's argument also fails on another basis. FNBHC contends that "there were no unfulfilled conditions as of the March 31, 1985 issuance date," and that F & D did not rely on the May 6 proposal. *See* doc. 67. In support of this contention, the plaintiff cites exhibit 26, a "conditional" quote which specifies four items needed. Number one is: "Satisfactorily completed F & D Holding Company Proposal Form." (doc. 67, ex. 26). (*See also* doc. 64, ex. 28, 32, 33). Even if I were to accept the plaintiff's capacity argument, the evidence in the record is that the policy was conditional on the receipt of a proposal form from the holding company. FNBHC admits that Jernagan signed the May 6 proposal on behalf of the holding company, and it is undisputed that it contained the same material omission as the February 19 proposal.

■ As a secondary argument, FNBHC contends that Jernagan answered the question truthfully. FNBHC argues that Jernagan did not know of any act, error, or omission that might result in a claim—because he

did not think a claim would arise from his acts. In simple language, the plaintiff's argument is: "He thought he would get away with it." Even if true, it is irrelevant. Florida law does not require that a misrepresentation be deliberate, or even knowing; even an innocent material misrepresentation voids the policy. "[W]here either an insurer would have altered the policy's terms had it know the true facts or the misstatement materially affects risk, a nonintentional misstatement in an application will prevent recovery under an insurance policy." *Continental Assurance Co. v. Carroll*, 485 So.2d *supra*, 409. "The statute contains no knowledge or intent element; unintentional or unknowing misstatements bar recovery under a policy if they alter the risk or the likelihood of coverage." *Sahlen*, *supra*, 999 F.2d at 1536. *See also Fernandez v. Bankers National Life Ins. Co.*, 906 F.2d 559 (11th Cir.1990). More importantly, the answer was not innocent or unintentional, as the criminal conviction plainly established.

It is undisputed that the conduct for which Jernagan was convicted was ongoing in February 1985, and had been going on during the previous year, so that he knew that the truthful answer should have been "yes." The proposal asked if Jernagan knew of anything which *might* result in a claim, not if he knew of anything that he thought would result in a claim. Possibly, he did think his scheme would escape detection. Even so, he certainly knew of his own actions, and he knew that they might form the basis of a claim. Jernagan, acting in behalf of FNBHC, made a material misrepresentation in stating that he knew of no "act error or omission which might give rise to a claim under the policy." Therefore, pursuant to Section 627.409, Florida Statutes, the insurance policy at issue is void *ab initio*. Therefore, the defendant's second motion for summary judgment must be, and is, GRANTED on this basis.

## C. *Dishonesty Exclusion.*

As an additional basis for granting summary judgment, the defendant contends that the plaintiff's claim is barred by the dishonesty exclusion of the policy. Paragraph (3) of the subject policy states:

## 3. EXCLUSIONS

(a) Except insofar as the Bank may be required or permitted by law to indemnify the Directors and Officers, the Company shall not be liable to make payment for Loss in connection with any claim made against the Directors and Officers:

\*  \*  \*  \*  \*  \*

(4) brought about or contributed to by the dishonesty of the Directors and Officers. However, notwithstanding the foregoing, the Directors and Officers shall be protected under the terms of this policy as to any claims upon which suit may be brought against them by reason of any alleged dishonesty on the part of the Directors and Officers unless a judgment or other final adjudication thereof adverse to the Directors and Officers shall establish that acts of active and deliberate dishonesty committed by any of the Directors and Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.

As noted above, Jernagan pled guilty to conspiracy to commit bank fraud, two counts of bank fraud, making a false statement on a bank document, and violation of the currency reporting requirements. The plaintiff argues that the crimes to which Jernagan pled guilty are not necessarily crimes of dishonesty. This argument is frivolous. *See, e.g., Pacific Ins. Co. v. General Development Corp.*, 28 F.3d 1093 (11th Cir.1994). Likewise, FNBHC's contention that Jernagan's criminal convictions are not a "final adjudication," apparently because they were based on guilty pleas, rather than a jury verdict, is equally frivolous.

Primarily, FNBHC argues that the dishonesty clause is not applicable because its complaint is based not only upon those acts to which Jernagan pled guilty, but also other dishonest acts of Jernagan. However, the plain language of the exclusion only requires that the loss be "contributed to" by the dishonest acts of a director or officer. When sentencing Jernagan, Chief Judge Stafford found that First National Bank had suffered

losses of $751,176.86 as a result of Jernagan's crimes. FNBHC does not deny that these losses contributed to this claim. It is undisputed in the record that the plaintiff's claim was contributed to by the dishonesty of Jernagan. This claim is excluded from coverage by the policy's dishonesty exclusion. Therefore, the defendant's second motion for summary judgment must be, and is, GRANTED on this basis also.

For the reasons set out above, the Clerk shall enter judgment for the defendant, together with taxable costs.

DONE AND ORDERED.