686 So.2d 1378 (1997)
Michael Jay PERLMAN, Appellant,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, INC., et al., Appellees.
No. 95-2296.
District Court of Appeal of Florida, Third District.
January 22, 1997.
Andrew Hall and Associates and Andrew C. Hall and Christopher J. Dawes, Miami, for appellant.
Rumberger, Kirk & Caldwell and Joshua D. Lerner and Scott M. Sarason; Brenton N. *1379 Ver Ploeg and Ivonne Prieto, Miami, for appellees.
Before SCHWARTZ, C.J., and GODERICH and GREEN, JJ.
SCHWARTZ, Chief Judge.
In this action for the rescission of a life insurance contract because of alleged fraud in the inducement, we hold that, if successful, the owner of the policy is entitled to the return of the premiums already paid plus interest less only the actuarial value of the insurance during its existence. Because the trial court directed a verdict for the carrier and its salesperson on the therefore erroneous ground that it was entitled to retain that portion of the premiums which represented its expenses and profits, we reverse for a new trial. We also hold, contrary to another ruling below, that the jury may consider the liability for punitive damages of the sales representative who allegedly committed the fraud.

I.
In 1989, essentially as an investment vehicle and allegedly in reliance upon specific representations that it would cost no more than four annual premiums of $149,368 each, the appellant Perlman purchased a Prudential Life Insurance Company "Survivorship Modified Whole Life Policy" which featured $1,000,000 coverage on the lives of his elderly parents. The sale was made by an agent, Sherry Spalding, for which Prudential paid a partial commission of $75,000. In January of 1990, 1991 and 1992, Perlman made three of the projected annual premiums. In November, 1992, however, Spalding unexpectedly informed him that, in addition to the fourth scheduled installment, Prudential required at least $80,000 more to keep the policy in effect. After a belligerent series of communications, Perlman declined to pay the extra premium and the policy was terminated. Prudential refunded Perlman only the cash value of the policy, $263,046.
In the present action, which alleged that the contract was void as induced by fraudulent representations as to its cost, Perlman sued for rescission and for consequent compensatory damages in the amount of the unreturned premium payments, $185,058, plus interest. He also sought but was denied leave to seek punitive damages against Spalding and her P.A.[1]
After all the evidence at a week-long trial, the defendants moved for directed verdict in their favor. Although the trial judge ruled that the fraud issue presented a jury question, he granted the motion[2] on the sole ground that, as a matter of law, Perlman had sustained no compensatory damages. This ruling was in turn based on the acceptance of the defense position that, even if there had been fraud justifying rescission, Prudential was legally entitled to the amounts it had retained as compensation for the risk involved in maintaining coverage for the senior Perlmans, who had not died, during the three-plus years the policy was in effect. We reverse.

II.
In ordering a new trial, we first agree with the trial court that the evidence, viewed in the required light most favorable to the plaintiff, presented a jury question as to whether the contract was fraudulently induced and was therefore properly subject to rescission on that ground.[3] See HTP, Ltd. v. *1380 Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996); Woodson v. Martin, 685 So.2d 1240 (Fla.1996); Randolph v. Mitchell, 677 So.2d 976 (Fla. 5th DCA 1996).

III.
We find error, however, in the determination below on the key issue of damages.
1. Initially, we do reject Perlman's primary contention that, if found liable, the carrier must return all the premiums plus interest. Although this is indeed apparently the majority rule, see Dreiling v. Home State Life Ins. Co., 213 Kan. 137, 515 P.2d 757 (1973); Annot., Remedies and Measure of Damages for Wrongful Cancellation of Life, Health, and Accident Insurance, 34 A.L.R.3d 245, at 312-19, 321-23 (1970), we think it is erroneously in conflict with the principle that the parties to a rescinded agreement are required, insofar as possible, to restore the status quo, see Lang v. Horne, 156 Fla. 605, 23 So.2d 848 (1945); Royal v. Parado, 462 So.2d 849, 856 (Fla. 1st DCA 1985); 9 Fla. Jur.2d Cancellation, Reformation, and Rescission of Instruments §§ 34-36 (1979), by crediting each other with "the value of what he has received in the transaction." Restatement (Second) of Torts § 549(1)(a)(1977); see also Steinbauer Assocs., Inc. v. Smith, 599 So.2d 746, 748 (Fla. 3d DCA 1992), review denied, 606 So.2d 1166 (Fla.1992); Duffy v. Speroni, 580 So.2d 862, 863 (Fla. 3d DCA 1991).
Refunding all the premiums overlooks the economic reality that Perlman did receive meaningful "value" during the contract's existence in the million dollar risk to the company and the million dollar return he would have claimed if his parents had died during that time. As the Supreme Court of the United States said in Lovell v. St. Louis Mut. Life Ins. Co., Ill U.S. 264, 275, 4 S.Ct. 390, 396, 28 L.Ed. 423, 427 (1884):
[The insured] demands a return of all the premiums paid by him, with interest, less the amount of his premium note; and that said note shall be delivered up to be canceled. But we do not think that he is entitled to a return of the full amount of his premiums paid. He had the benefit of insurance upon his life for five years, and the value of that insurance should be deducted from the aggregate amount of his payments.
Mutual Reserve Fund Life Ass'n v. Ferrenbach, 144 F. 342, 344-45 (8th Cir.1906) contains similar language:
Some of [the cases in the majority] proceed upon the assumption that prior to the time of wrongful cancellation the insured or beneficiary never received any benefit from the policy, and, on the other hand, that the insurance company gave nothing of value for the premiums paid to it.... There is no more reason for saying that an insured has nothing of value until he dies, than there is for saying that one is not benefited by a policy of fire insurance unless his house is destroyed by fire.

Ferrenbach, 144 F. at 344-45. In accordance with this line of authority, which we regard as the better reasoned, we conclude that the policy owner must credit the carrier with the "Value" of the insurance it had already provided. Accord Provident Sav. Life Assurance Soc'y v. Shearer, 151 Ky. 298, 151 S.W. 938 (1912); Albertus v. ICOA Life Ins. Co., 247 Or. 618, 620, 431 P.2d 264, 265 (1967)[4]; *1381 Sabbagh v. Professional & Business Men's Life Ins. Co., 79 S.D. 615, 116 N.W.2d 513 (1962); McKindley v. Drew, 69 Vt. 210, 37 A. 285 (1896); 5 Corbin on Contracts § 1118 (1964); 5 Williston on Contracts §§ 1330, at 3737-38,[5] 1460A, at 4085 (1937); see also Arad v. Caduceus Self Ins. Fund, Inc., 585 So.2d 1000 (Fla. 4th DCA 1991) (dicta indicating present result).
2. This holding does not, however, result in victory for the appellees. Far from it. Under the rule we adopt, the carrier is entitled to retain only that portion of the premiums which represent the "value" of the policy, see Ferrenbach, 144 F. at 345; Ebert v. Mutual Reserve Fund Life Ass'n, 81 Minn. 116, 128, 83 N.W. 506, 510 (1900), aff'd, 81 Minn. 116, 84 N.W. 457 (1900), that is, the money equivalent of the chance, as determined by the mortality tables, that persons of the senior Perlmans' ages would have died between January, 1990, and December, 1993, and thus have entitled the plaintiff to the million dollars.[6] The carrier cannot retain anything beyond that, specifically not the expenses, costs, commissions, and profits involved in the transaction which it expended to others or kept for itself. See Restatement (Second) of Torts § 549 (1977). As was said in Abell v. Penn Mutual Life Ins. Co., 18 W.Va. 400, 431 (1881):
If the company elects to annul the contract and policy, I cannot see how it is justly entitled to retain anything as profits on a policy, which it has chosen to annul. The court is careful to say, that it can retain nothing for profits, which in the future would have been made by the company out of the contract; and it seems to me, that it is equally clear, that it can retain nothing for profits made under the policy in the past. It can retain only such sum as would actually pay it without any profit for the risk it had run before the annulment of the policy and while it was in force.
Similarly, Trimble v. American Sav. Life Ins. Co., 152 Ariz. 548, 556, 733 P.2d 1131, 1139 (Ct.App.1986) approved a finding offsetting only "mortality expenses" and not "commissions, selection and issue costs" against the premiums paid for an investment policy rescinded for fraud. The court said:
Clearly, the expenses of perpetrating a fraud are not fair costs, or ones for which the perpetrator should be recompensed by the victim. The offset for only mortality expenses seems most logical because they are some of the few expenses which relate directly to the life insurance. The trial judge's ruling that only mortality expenses should be included in the offset is affirmed.
Because the funds received and not refunded by Prudential clearly include these legally unrecoverable elements (including, at the least, Spalding's $75,000 commission), the finding that Perlman had sustained no compensatory damages whatever cannot be upheld. While it is true, as the defendants point out, that the plaintiff introduced no affirmative evidence of the policy's "value," he was not required to do so. Because the company is at once (a) the party in possession of the pertinent facts, State ex rel. Davidson v. Couch, 117 Fla. 609, 158 So. 103 (1934)[7]; see Savannah, F. & W. R.R. v. Harris, 26 Fla. 148, 7 So. 544 (1890), (b) the putative wrongdoer, see 5 Corbin on Contracts *1382 § 1112, at 596 (1964),[8] and (c) the party seeking an offset or mitigation of that portion of the premiums it must return, see Juvenile Diabetes Research Found. v. Rievman, 370 So.2d 33, 36 (Fla. 3d DCA 1979), we hold that the defendants, not the plaintiff, have the burden of proof on this issue. See In re N. Carolina Fire Ins. Rating Bureau, 275 N.C. 15, 165 S.E.2d 207 (1969).
At the new trial, therefore, the jury should be instructed that, if it finds for the plaintiff on liability, it should award the premiums paid plus interest less only that amount shown by the greater weight of the evidence to be the "value"[9] of the insurance protection provided during the life of the contract.[10] See Lovell, 111 U.S. at 275, 4 S.Ct. at 396, 28 L.Ed. at 427; McKindley, 69 Vt. at 210, 37 A. at 285.

IV.
We also find error in the trial court's refusal to permit the assertion of a punitive damages claim against Spalding and her P.A. See Burton v. Linotype Co., 556 So.2d 1126 (Fla. 3d DCA 1989), review denied, 564 So.2d 1086 (Fla.1990); Machado v. Foreign Trade, Inc., 478 So.2d 405 (Fla. 3d DCA 1985); Gold v. Wolkowitz, 430 So.2d 556 (Fla. 3d DCA 1983), pet. for review denied, 437 So.2d 677 (Fla.1983); Ashland Oil, Inc. v. Pickard, 269 So.2d 714 (Fla. 3d DCA 1972), cert. denied, 285 So.2d 18 (Fla.1973). As was held in Cruise v. Graham, 622 So.2d 37, 41 (Fla. 4th DCA 1993):
[T]he rule now seems clear in Florida that a claim of fraud sufficient to justify compensatory damages is also sufficient to support an award of punitive damages.
See generally HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d at 1239; Woodson v. Martin, 685 So.2d at 1241.

V.
For these reasons, the judgment is reversed and the cause remanded for a new trial on the issues of liability and compensatory damages against the three defendants, and punitive damages against Spalding and the P.A.
Reversed and remanded with directions.
NOTES
[1] He did not claim that relief against Prudential.
[2] But see Gutierrez v. L. Plumbing, Inc., 516 So.2d 87 (Fla. 3d DCA 1987); Dysart v. Hunt, 383 So.2d 259 (Fla. 3d DCA 1980), review denied, 392 So.2d 1373 (Fla.1980); Freeman v. Rubin, 318 So.2d 540 (Fla. 3d DCA 1975); Ditlow v. Kaplan, 181 So.2d 226 (Fla. 3d DCA 1965), holding that, in such a situation, the preferable course is to submit the case to the jury.
[3] Because Perlman made no such contention below, we do not consider whether rescission might have been based on some other ground, such as mutual mistake or negligent misrepresentation, 9 Fla.Jur.2d Cancellation, Reformation, and Rescission of Instruments §§ 16, 18, 21, 29 (1979), or the effect on the damage issue of any such claim.
[4] [T]here must be deducted from the amount of plaintiff's recovery, the actual cost to the defendant of carrying the risk while the policies were in force and until the date of plaintiff's demand for return of the premiums paid.

Albertus, 247 Or. at 620, 431 P.2d at 265.
[5] Recovery of the full amount of the premiums after the insurer has sustained for some time the risk of the insurance and the insured has enjoyed the benefit of protection is obviously unjust and is so recognized by the better authorities.

Williston, supra., § 1330.
[6] See infra note 9.
[7] See also Leedy v. First Fed. Sav. & Loan Ass'n, 142 So.2d 99 (Fla. 2d DCA 1962); 29 Am.Jur.2d Evidence § 161, at 186-87 (1994); George E. Palmer, I The Law of Restitution § 4.14, at 486-87 (1978):

There is substantial support for the view that the plaintiff is entitled to recover premiums only to the extent that they exceed the value of this benefit.... The facts are peculiarly within the knowledge of the company, and it should have the burden of proving the amount to be deducted. [emphasis supplied]
[8] In the cases now being discussed it must be remembered that the defendant is a wrongdoer. Doubts and difficulties in the determination of this question of value should be resolved against the defendant.

5 Corbin, supra, § 1112; see also Strauss v. Mutual Reserve Fund Life Ass'n, 128 N.C. 465, 39 S.E. 55 (1901).
[9] Insofar as, in our profound ignorance, we are able to understand the pertinent insurance parlance, the defendants will thus have the burden of proving the amount of "net premium," the theoretical sum required to pay the policy benefits calculated by the mortality tables (without taking account of the insured's "individual risk characteristics," see Restatement (Second) of Restitution, Tentative Draft No. 1, § 20 comment g (1983)), and an assumed future rate of yield on investments. It must return the remainder of the so-called "gross premium," which is composed of "expense loading," which includes expenses, profits and commissions. See 1 Appleman, Insurance Law and Policy § 2 (1981); 5 Couch on Insurance 2d § 30:1 (Rev. ed 1984); see also Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 884 (Mo.1960).
[10] In any final judgment, the defendants would of course be credited with the already refunded cash value of $263,046.