[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14239
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23745-JAL

JORGE PORTER,

                                        Plaintiff - Appellee,

versus

METROPCS COMMUNICATIONS INC.,
METROPCS FLORIDA, LLC,

                                        Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 14, 2014)

Before ED CARNES, Chief Judge, and WILSON and JORDAN, Circuit Judges.

PER CURIAM:

MetroPCS Communications, Inc., MetroPCS Florida, LLC, and CAI International, Inc. (collectively, MetroPCS) appeal from the district court's order granting Jorge Porter's motion to remand to state court after MetroPCS removed pursuant to the Class Action Fairness Act (CAFA). After careful consideration of the parties' briefs and the record, we affirm.

## I.

Porter filed a putative class action in Florida state court alleging that CAI International, Inc., an authorized MetroPCS retailer, overcharged customers in Florida who purchased Samsung Galaxy Indulge Cellular phones by charging tax based on the pre-rebate price. The parties do not dispute that, at the time the action was filed in state court, the amount in controversy was below CAFA's minimum for creating federal jurisdiction. In response, MetroPCS moved to compel arbitration based on the terms and conditions (T&C) of the service agreements between MetroPCS and its customers. Porter opposed the motion. The Florida trial court sided with Porter, but it was reversed on appeal.

On remand, Porter filed an amended complaint.[1] The amendment added two counts.[2] One alleges false advertising, and the other alleges a violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201–501.23.

---

[1] Porter had already once amended his complaint, but the previous complaints are not relevant to this appeal. We will therefore refer to this second amended complaint simply as "the complaint."

[2] This opinion will refer to the class that alleged overcharges as the "Tax Class" and the class that alleged false advertising regarding the T&C as the "Contract Class."

Both counts were based on MetroPCS's use of the term "no contract" in its advertising in spite of the inclusion of the T&C in MetroPCS's service agreements with customers. These two additional counts seek damages, fees, and costs under Fla. Stat. §§ 817.41(6) and 501.2105. They also seek equitable relief in the form of a permanent injunction of MetroPCS's use of the "no contract" advertisement and/or "disclos[ure] in all advertisement of its products and services that contractual terms do apply." Porter seeks no other equitable relief pursuant to those counts.

MetroPCS removed the putative class action to the United States District Court for the Southern District of Florida. MetroPCS asserted jurisdiction under the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005). When a state court class action defendant removes to a United States district court, CAFA creates federal jurisdiction where the defendant establishes that "(1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)–(6)). MetroPCS attempted to establish the amount in controversy by offering evidence of its total revenue in Florida during the class period, which included revenue from its provision of

services to customers as well as from sales of devices and accessories. The total revenue estimate did not offer details regarding what amounts came from each source.

Porter moved to remand to Florida state court, arguing that MetroPCS overestimated the amount in controversy by including all Florida customers in its calculation, even though they did not all meet the class definition. The district court agreed with Porter and remanded. Specifically, the district court stated that it was "left to speculate as to the size of the Contract Class and, ultimately, the amount of damages that the Contract Class has put at issue." MetroPCS petitioned for permission to appeal the order. We granted that petition, and this appeal followed.

## II.

We review an order granting a motion to remand for lack of jurisdiction de novo. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007). We affirm the district court, but we do so on grounds different from the reasoning contained in the district court's order. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007).

When considering whether a defendant has established the requisite amount in controversy for removal under CAFA, a district court looks to "the notice of removal and accompanying documents." *Lowery*, 483 F.3d at 1214. This

4

includes, of course, the complaint. *See id.* at 1213. "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (internal quotation marks omitted). The defendant can take into account damages and any equitable relief the plaintiff seeks, as long as the estimate is not overly speculative. *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2007). Here, in estimating the amount placed in controversy, MetroPCS cited its total Florida revenue during the class period. MetroPCS justifies that method by asserting that the complaint alleges fraudulent inducement and that, under Florida law, rescission of contract is a form of relief available to plaintiffs who, like Porter, allege fraudulent inducement. *See Perlman v. Prudential Ins. Co. of Am., Inc.*, 686 So. 2d 1378 (Fla. Dist. Ct. App. 1997) (permitting rescission of an insurance contract, restitution, and punitive damages where the plaintiff alleged fraudulent inducement).[3]

---

[3] It should be noted, however, that the court limited restitution to the premiums paid by the plaintiff *less the actuarial value of the provision of insurance*. *See Perlman*, 686 So. 2d at 1380–81. MetroPCS does not attempt to estimate the value of the services provided to the class and thereby arrive at a more precise measure of the amount placed in controversy by a hypothetical plea for rescission. Perhaps MetroPCS finds such an exercise to be impossible, but our precedent demands that we not engage in the speculation required by acceptance of such a calculation. *See Lowery*, 483 F.3d at 1220. Nonetheless, we need not so much as reach this question, as rescission was not sought.

Assuming that rescission is available to Porter, MetroPCS has failed to establish the minimum amount in controversy.  MetroPCS's revenue includes not just that realized from the service agreements that may be rescinded as a result of this litigation, but also the revenue it receives from the sale of cell phones, other devices, and accessories without any corresponding commitment to MetroPCS. There is no reason to believe that any of that revenue would have to be returned to customers should the class action succeed on the merits.  Without any breakdown of MetroPCS's revenue, the district court would have to engage in hopeless speculation in assessing what amount may be subject to rescission; this it cannot do.  *See Lowery*, 483 F.3d at 1220.

The remaining amounts (or non-amounts) MetroPCS cites in its notice of removal are insufficient to establish the amount in controversy requirement contained in CAFA.  MetroPCS notes that Porter's demand for attorney's fees, costs, and punitive damages must be included in the calculation of the amount in controversy.  MetroPCS then informs us that attorney's fees and costs can equal thirty percent of the recovery.  Worse still, punitive damages can add up to nine times compensatory damages.  We do not doubt that this is the case.  Unfortunately for MetroPCS, those multiples do us no good without a base amount to multiply. Any concrete amount we derive from them would be hopelessly speculative.  *See id.*

6

The notice of removal then cites the "substantial" costs of complying with the equitable relief Porter seeks.  We are certain that the costs of compliance would be substantial.  Like the fees, costs, and punitive damages, though, MetroPCS fails to put any concrete number on these compliance costs.  Using them to calculate the amount in controversy would again require us to engage in unguided speculation.  This we cannot do.  *See id.*

As it stands, the estimates put forth by MetroPCS in its notice of removal to which we can give credit provide us with an approximate amount in controversy of $5,285.00, which comes entirely from the Tax Class.  Because MetroPCS failed to establish the minimum amount in controversy, the district court was correct to grant Porter's motion to remand.

**AFFIRMED.**