NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LUIS MORA and ROSAURA MORA,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellants,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　Case No. 2D13-4125
　　　　　　　　　　　　　　　　　　　)
TOWER HILL PRIME INSURANCE　　　　　)
COMPANY,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Appellee.　　　　　　　　)
_____)

Opinion filed January 23, 2015.

Appeal from the Circuit Court for
Hillsborough County; Michelle Sisco,
Judge.

A. Lee Smith and Aaron S. Kling of
Thompson Trial Group, P.A., Tampa, for
Appellants.

Anthony J. Russo and Ezequiel Lugo of
Butler Pappas Weihmuller Katz Craig LLP,
Tampa, for Appellee.


ALTENBERND, Judge.

　　　　　　Luis and Rosaura Mora appeal a final summary judgment entered in favor

of Tower Hill Prime Insurance Company. The judgment rescinded their homeowners

insurance policy based on the theory that the Moras had misrepresented the condition

of their home in violation of section 627.409, Florida Statutes (2007), when they

submitted their applications for the coverage. We reverse because the limited evidence in the record at the time of the hearing on Tower Hill's motion for summary judgment did not establish its right to obtain a summary judgment on this defense. See Griffin v. Am. Gen. Life and Accident Ins. Co., 752 So. 2d 621 (Fla. 2d DCA 1999).

The Moras, who happen to be realtors, decided to purchase a model home in November 2005. The home had been built in 2002 and had been used for three years as the builder's office and model. In connection with this purchase, the Moras obtained a homeowners insurance policy from Tower Hill. In 2007, apparently because of a change in occupancy status, this policy was cancelled and replaced with another Tower Hill policy. The replacement policy was renewed for the period of November 30, 2009, to November 30, 2010.

In July 2010, nearly five years after the purchase of the home, the Moras made a sinkhole claim. This claim was investigated by Tower Hill, and it confirmed that sinkhole damage had occurred. The Moras and Tower Hill apparently disagreed on the extent of the damage and the amount Tower Hill owed to the Moras. As a result, the Moras sued Tower Hill in 2011.[1]

It is undisputed that the Moras signed an application for the original policy and for the replacement policy. On page four of each of the form applications, the question appears: "Do you have any knowledge of any prior repairs made to any structures on the insured location for cracking damage?" On each application, the box next to this question is checked "no."

---

[1]The Moras filed for bankruptcy in 2009 or 2010, but there is nothing in the record indicating that this has affected the matters on appeal in this case.

During discovery, Tower Hill obtained a real estate inspection form that was prepared when the Moras purchased this home. They also obtained a form identified as the builder's "Homeowner Orientation 1.1," or homeowner orientation report. On these forms, there are notations that a crack existed around the pool deck and that a "large crack" existed on the ceilings of the living room, the dining room, the family room, and the home theater. The homeowner orientation report was signed by Mrs. Mora, and it has handwritten notations that appear to be instructions for repairs. The handwritten notations may be those of one of the Moras. These notations include: "repair 3 cracks in drywall at ceiling," "repair drywall at . . . stairwell base board," "repair nook window drywall cracks," "repair cracks at entry under soffit (stucco)," and "fix cracks" under three windows.

The Moras were not asked about these documents during their depositions. It may be that the documents were obtained by discovery after those depositions were taken. Tower Hill moved for summary judgment, relying on the questions about "cracking damage" in the applications and on the two documents from the home inspection. It submitted an affidavit from an assistant vice president of underwriting that identifies these documents and then concludes:

> 17. Had Tower Hill known of the existing cracking damage to the property, as listed on the Real Estate Inspection report, and the Homeowner Orientation report, it would not have issued [the original policy].

> 18. Had Tower Hill known of the existing damage to the property, as listed on the Real Estate Inspection report, and the Homeowner Orientation report, it would not have issued [the replacement policy].

- 3 -

When moving for summary judgment, Tower Hill did not file any photographs or other evidence describing the nature or extent of the "cracks" mentioned in the inspection reports from 2005. It filed a two-page affidavit from an employee of the builder that simply authenticates the real estate inspection form and homeowner orientation report as belonging to the Moras. There are no depositions or affidavits from anyone who may have performed the requested repairs or who was able to explain more about the "cracks" mentioned in these forms. Mr. and Mrs. Mora each testified when deposed in 2012 that they did not recall noticing any cracks in the house at the time of purchase seven years earlier.

Based only on this evidence, the trial court granted summary judgment in favor of Tower Hill declaring the homeowners policy void. The Moras appeal that summary judgment.

Section 627.409 allows an insurer to forfeit coverage when an insured makes certain misrepresentations. This section provides in pertinent part:

> A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

§ 627.409(1)(a)-(b).

- 4 -

The statute allows a policy to be forfeited under at least two distinctly different circumstances. First, the misrepresentation may be an intentional act of fraud. If the insured knowingly makes a false statement in hopes that the insurance company will rely on that statement to issue the insurance policy, there is no dispute that the policy can be rescinded. See, e.g., Gainsco v. ECS/Choicepoint Servs., Inc., 853 So. 2d 491, 492-93 (Fla. 1st DCA 2003). Proof of such fraud, of course, is difficult. The insurer has the burden of proof to establish a misrepresentation. Griffin, 752 So. 2d at 623. Thus, actual fraud is not the most common circumstance under which insurers avoid paying claims under insurance policies. In this case, Tower Hill does not argue that it established actual fraud as a matter of undisputed fact.

But a policy can also be rescinded when a misrepresentation is "material to the acceptance of the risk" or "if the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract." See § 627.409(1)(a), (b).[2] It is well established that in these instances a misrepresentation need not be knowingly made in order for the insurer to void the policy. See Cont'l Assurance Co. v. Carroll, 485 So. 2d 406 (Fla. 1986). But "forfeitures of insurance policies are not favored [in Florida], especially when the event that gives rise to the insurer's liability has occurred." LeMaster v. USAA Life Ins. Co., 922 F. Supp. 581, 585 (M.D. Fla. 1996) (citing Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951), and Travelers Protective Ass'n of Am. v. Jones, 91 F.2d

---

[2]In most, if not all, circumstances in which disclosure of the "true facts" would have led the insurer in good faith not to issue the policy—satisfying subsection 627.409(1)(b)—the insured's misrepresentation would also be "material to the acceptance of the risk" under subsection (1)(a). Thus, there is a great degree of overlap between the two provisions of the statute.

377, 378 (5th Cir.1937)). Thus, on a claim to rescind a policy based on a misrepresentation that falls short of fraud, the insurer must prove that the insured's statement is a misrepresentation, that it is material, and that the insurer detrimentally relied on it. See Griffin, 752 So. 2d at 623 (citing Douglas v. Mut. Life Ins. Co. of N.Y., 191 So. 2d 483 (Fla. 2d DCA 1966)). Under subsection 627.409(1)(b), the insurer needs to provide an explanation as to why "in good faith" and "pursuant to a policy requirement or other requirement" it would not have issued the policy or would not have issued it under the same terms.

Tower Hill fell short of its burden of proof for this summary judgment in at least two respects. First, it did not establish beyond factual dispute that the answer to the question in the application is incorrect or is a misrepresentation. Second, assuming the statement is a misrepresentation, Tower Hill's proof does not establish that the representation is material to the acceptance of its risk or that the true facts would have caused it not to issue these policies.

As to the first deficiency, Tower Hill seems to equate "cracking damage" in its application with "cracks" or "repair" of cracks on the inspection forms. We conclude that an insured might not regard repair of common drywall or stucco cracks as a matter that involved more than normal maintenance. In other words, an insured might conclude that Tower Hill added the word "damage" to the question to limit the inquiry to events more significant than common drywall "cracking." As explained in Mercury Insurance Co. of Florida v. Markham, 36 So. 3d 730, 733 (Fla. 1st DCA 2010):

> An insurer may not deny coverage under this statute, however, if the alleged misrepresentation was in response to an ambiguous question. See Boca Raton Comty. Hosp., Inc. v. Brucker, 695 So. 2d 911, 913 (Fla. 4th DCA 1997);

- 6 -

> *Comprehensive Benefit Adm'rs, Inc. v. Nu-Cape Constr.,*
> *Inc.*, 549 So. 2d 700 (Fla. 2d DCA 1989). A question is
> ambiguous when it is susceptible to two reasonable
> interpretations, one in which a negative response would be
> correct and one in which an affirmative response would be
> correct.

If Tower Hill intended "cracking damage" to include all repairs of any crack in drywall or stucco, then it would seem the questions on its applications were ambiguous. In this record, Tower Hill has not established beyond factual dispute that the Moras made a misrepresentation on their applications when they indicated that they were unaware of any prior repairs for "cracking damage" on their home.

As to the second deficiency, on this record the "true facts" for purposes of section 627.409 are nothing more than facts that the house had drywall, stucco, and other cracks that were resolved without complication by the builder before the sale to the Moras in 2005. It is a simple fact of life that most new Florida homes develop nonstructural cracks in drywall, stucco, and other areas in the several years following their construction. Tower Hill cannot seriously contend that it refuses to insure all homes in Florida that have a history of minor maintenance to drywall and stucco at the time of the application. If that were true, then it would only insure a handful of homes in Florida.

We would expect that a positive answer to Tower Hill's question about cracking damage on its application would lead to further investigation to determine if the true facts indicate a condition material to the risk or a matter that might cause Tower Hill to underwrite the risk in a different manner. But at this point in the litigation, our expectations are not important to the outcome of the case. The conclusory opinion of Tower Hill's assistant vice president of underwriting in the affidavit simply does not

- 7 -

present sufficient facts to explain why the answers to this specific question on the applications were material to the risk and something on which Tower Hill detrimentally relied or why the "true facts" in the inspection reports were a matter that would have caused Tower Hill "in good faith" not to issue the two policies "pursuant to a policy requirement or other requirement."

Accordingly, we reverse the summary judgment and remand for further proceedings.

Reversed and remanded.


CRENSHAW, J., and DAKAN, STEPHEN L., ASSOCIATE SENIOR JUDGE, Concur.