# Third District Court of Appeal

## State of Florida

Opinion filed June 15, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-54
Lower Tribunal No. 09-89718
_____

**Certain Underwriters at Lloyd's London,**
Appellant,

vs.

**Raul and Ada Jimenez,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Clinton D. Flagg and Carol A. Fenello, for appellant.

Arthur J. Morburger, for appellees.

Before WELLS, FERNANDEZ and SCALES, JJ.

FERNANDEZ, J.

Certain Underwriters at Lloyd's London ("Lloyd's") appeals a final judgment following a non-jury trial, in which the trial court granted declaratory relief to Raul and Ada Jimenez, the appellees/homeowners, and determined that Lloyd's was not entitled to rescission of the property insurance policy issued to the homeowners. We reverse because the misrepresentation by the Jimenezes in the insurance application was material and was detrimentally relied upon by Lloyd's, precluding coverage for the Jimenez's kitchen fire and entitling Lloyd's to rescission of the policy.

In 2007, appellee Raul Jimenez, on behalf of himself and his wife, Ada Jimenez, completed and executed an application for homeowner's insurance policy on their home built in 1985, with assistance from their insurance agent, A&A Insurance Underwriters ("A&A"). A&A submitted the Jimenez's homeowner's insurance application to a managing general agent of Lloyd's.

During the application process, A&A asked whether Mr. Jimenez had a smoke, temperature or burglar alarm, and if so, whether these alarms were monitored. Mr. Jimenez said he had a monitored central station alarm on the property. On the application form, Mr. Jimenez designated the central station monitor as a protection device that monitored for smoke, temperature, and burglary.

The agent explained to Mr. Jimenez that by signing the "Applicant's Application Statement," Mr. Jimenez warranted that the information provided was true, complete and being offered and warranted to the insurer as a condition to issue the policy. This statement expressly superseded the "knowledge and belief" affirmation on the second page of the application. After signing the application, Mr. Jimenez was given a copy and was given a chance to ask questions and make sure his answers were true and correct. Based on the Jimenez's representations in the application, Lloyd's issued to them a homeowner's insurance policy, effective in 2007. The policy was given a discount because of the representation that the Jimenezes had a central station alarm monitoring for smoke, temperature, and burglary. The quote for the policy stated that the discount was conditioned on the representation of the presence of a central station monitored alarm in the home.

The 2007 policy was set to expire in 2008. A&A was notified of this expiration by Lloyd's managing general agent. The application for the 2008 policy included Lloyd's conditional endorsements, one of which was the Protection Device Endorsement. The Jimenezes, through their agent A&A, requested to be bound to the new 2008 policy coverage. A&A, as agent of the Jimenezes, affirmatively represented that there had been no changes in the property or the risk as previously stated in the insureds' application for coverage. When the 2008 policy expired, the Jimenezes reapplied for a 2009 policy. For the 2009 policy,

they provided written confirmation that the property and risk were as stated in the 2007 application.

The 2009 policy was effective from February 9, 2009 through February 9, 2010. The policy application provided a Concealment or Fraud provision, stating that the policy would be void if the applicant intentionally concealed or misrepresented any material fact or circumstance; engaged in fraudulent conduct; or made false statements pertaining to the insurance. The entire policy would be void if an insured has made false statements, regardless of whether the statements are intentional or fraudulent. The policy also included the Protection Device Endorsement provision, stating that the discounted premium reflects the submission that there is a central station alarm present on the property. As a condition of the insurance, the Jimenezes were required to maintain in good working order all fire alarms, security systems and physical protection devices identified in their application for insurance. The Protection Device Endorsement provision provided that all alarms/security systems must be fully operational and engaged at all times. Failure to comply with this condition would render the insurance null and void.

The 2009 policy was personally underwritten by Efren Serrate, president of the managing general agent of Lloyd's. Serrate testified at trial that a representation in the application that the property had central station monitored

4

smoke and temperature alarms was material to the risk. He further stated that, if the property actually did not have those systems, the Protection Device Endorsement would preclude insurance coverage. Serrate specified that he would not have accepted the risk and quoted a premium if he had known that the Jimenezes did not have a central station monitored smoke and temperature alarm.

In August 2009, there was a kitchen fire at the Jimenez's home. Lloyd's filed a two-count complaint for (1) declaratory relief, claiming that the policy did not provide coverage for the kitchen fire based upon the language of the protection device endorsement provision, and (2) alternatively, seeking rescission of the policy due to material misrepresentations in the application; i.e., that the Jimenezes had central station monitored smoke and temperature alarms. Even if not subject to rescission, Lloyd's alleged that coverage was precluded by the Protection Device Endorsement provision. The Jimenezes answered and counterclaimed for declaratory relief as to coverage and breach of contract.

Delta Alarm Systems monitored and maintained the Jimenez's alarm system. At trial, Jose Quintero, the corporate representative of Delta Alarm Systems, testified that the Jimenezes had a burglar alarm but not a central station monitored smoke or temperature alarm system. He further testified that they did not have this central station system and only the burglar alarm from the date of the

5

2007 application policy to the date of the kitchen fire incident on August 6, 2009, or at any other time.

Richard Corbett, who holds a Ph.D. in risk management and insurance, explained that the existence of protection device systems are material to a risk for two reasons: first, the possession of these types of alarms often create a discount in the rating; and second, these protection devices for homes of a particular age and configuration may be part of that cutoff test, whether the underwriter would take the risk at all. According to the record, the property was 22-years-old at the time of the application. Lloyd's contends that because this was close to Lloyd's age cutoff (25 years) for acceptance of properties without renovations, the underwriter would look for positive features, such as a monitored alarm, to determine acceptance of the risk.

Lloyd's alleged that it had tendered the full return of the insurance policy premium to the Jimenezes for the 2/9/09 to 2/9/10 policy which was in effect at the time of the loss. Furthermore, Lloyd's also tendered to them the return of premiums for the prior 2007 and 2008 policies. At trial, the parties agreed that the return of the premiums for each of these policy years had been tendered in full to the Jimenezes. The trial court found in favor of the Jimenezes for declaratory relief as to coverage and for breach of contract and held that Lloyd's was not entitled to rescission.

The interpretation of an insurance contract is a question of law and subject to de novo review. Certain Interested Underwriters at Lloyd's London v. Pitu, Inc., 95 So. 3d 290 (Fla. 3d DCA 2012). Whether a question in an insurance application is ambiguous is also a question of law subject to de novo review. GRG Transp., Inc. v. Certain Underwriters at Lloyd's London, 896 So. 2d 922 (Fla. 3d DCA 2005).

First, regarding the summary judgment issue, we agree with Lloyd's that the Jimenez's misrepresentations of the presence of a central monitored alarm system for smoke, temperature and burglary were material as a matter of law to the issuance of Lloyd's insurance policy. As such, recovery for the Jimenez's house fire was unwarranted.

Florida Statute section 627.409(1) provides that misrepresentations, omissions, concealment of facts, and incorrect statements on an insurance application will not prevent a recovery under the policy unless they are either: (1) fraudulent; (2) material to the risk being assumed; or (3) the insurer in good faith either would not have issued the policy or would have done so only on different terms had the insurer known the true facts. Lloyd's relies on (2) and (3) in claiming that the Jimenez's central monitored system statements in their application prevent recovery under the policy in question. See § 627.409(1), Fla. Stat. (2009).

7

An insurance company has the right to rely on an applicant's representation in an application for insurance and is under no duty to inquire further unless it has actual or constructive knowledge that such representations are incorrect or untrue. Indep. Fire Ins. Co. v. Arvidson, 604 So. 2d 854, 856 (Fla. 4th DCA 1992) ("An insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry."); North Miami Gen. Hosp. v. Cent. Nat'l Life Ins. Co., 419 So. 2d 800, 802 (Fla. 3d DCA 1982).

Under Florida law, an insurer has the right to unilaterally rescind an insurance policy on the basis of misrepresentation in the application for insurance. Fabric v. Provident Life & Acc. Ins. Co., 115 F.3d 908, 912 (11th Cir. 1997). The misrepresentation need not be fraudulently or knowingly made but need only affect the insurer's risk or be a fact which, if known, would have caused the insurer not to issue the policy or not to issue it in so large an amount. First Nat'l Bank Holding Co. v. Fidelity & Deposit Co. of Maryland, 885 F. Supp. 1533, 1535 (N. D. Fla. 1995). The insurer must prove that the insured's statement is a misrepresentation, that it is material, and that the insurer detrimentally relied on it. Mora v. Tower Hill Prime Ins. Co., 155 So. 3d 1224, 1227-28 (Fla. 2d DCA 2015).

In Mora, the insureds filed a claim with the insurer to recover for sinkhole damage to their home. Id. at 1226. The trial court granted the insurer's motion for

8

summary judgment on the basis that the insureds made misrepresentations in their insurance application regarding presence of cracks in the mobile home, that insurer was unaware of the cracks, and that had it known about these cracks, it would not have issued an insurance policy. Id. at 1227. The insurer relied on discovery documents citing previous repairs of cracks in the home, and the assistant vice president of underwriting's testimony that, had the insurer known of the past cracks, it would not have issued the policy. Id. at 1226-27. No evidence such as descriptions of the cracks or testimony from repairers about the extent of the cracks was submitted. Id. at 1226.

The Second District Court of Appeal reversed and remanded, finding that the insurer did not provide sufficient evidence: "the insurer needs to provide an explanation as to why 'in good faith' and 'pursuant to a policy requirement or other requirement' it would not have issued the policy or would not have issued it under the same terms." Id. at 1228. The insurer failed to establish beyond factual dispute that the insureds made a misrepresentation on their application when they indicated that they were unaware of any prior repairs for "cracking damage" on their home. Id. Additionally, the assistant vice president's conclusory opinion did not provide sufficient facts to explain why the answer to this specific question were material to the risk and something on which the insurer detrimentally relied

on. Id. at 1228-29. Nor were the discovery documents regarding previous repairs a matter that would have caused the insurer in good faith to not issue its policy. Id.

Unlike the Mora case, Lloyd's has presented sufficient evidence to show that the misrepresentation regarding the presence of a central monitored system was material to issuance of a policy and that, had Lloyd's known of such lack of protection, it would not have issued its policy. As discussed previously, Corbett explained that the existence of protection device systems was material. The testimony provided by Delta Alarm Systems' corporate representative, Jose Quintero, indicated that no agent for Lloyd's had been notified of the lack of a central monitored system on the property until after the fire incident occurred.

Lloyd's correctly contends that misrepresentation of a central monitored system on the Jimenez's property was material as a matter of law and need not have been made intentionally to be material. See Cont'l Assur. Co. v. Carroll, 485 So. 2d 406 (Fla. 1986) (life insurance policy on child voided where parents misstated child's health on policy application, though misstatement may have been unintentional); Life Ins. Co. of Va. v. Shifflet, 201 So. 2d 715, 719 (Fla. 1967) (incorrect and untrue statements to questions on an insurance application, material to the acceptance of the risk of the contract, do not under statute have to be made with knowledge of the incorrectness and untruth to vitiate the policy); Martinez v. Gen. Ins. Co., 483 So. 2d 892, 893 (Fla. 3d DCA 1986) (based on evidence

10

presented, trial court was entitled to find that the omission of insured's son's name was sufficiently material to the insurer's acceptance of the risk to warrant a denial of coverage, even if the omission was unintentional); First Nat'l Bank Holding Co., 885 F. Supp. at 1536 (material misstatements in application by someone other than the insured, even if unintentional, void the policy). Accordingly, the misrepresentation made by the Jimenezes regarding the presence of a central monitored system on the property in the insurance application precludes coverage because the misrepresentation was material and was detrimentally relied upon by Lloyd's.

Secondly, Lloyd's alternatively contends on appeal that, because the lack of a central monitored system was material to the issuance of the policy and was relied upon, the trial court erred in denying Lloyd's entitlement to rescind the policy. We also agree with this position.

If an insured's misrepresentation was material to the insurer's acceptance of the risk or, if the insurer in good faith would not have issued the policy under the same terms and premium, then rescission of the policy by the insurer is proper. United Auto. Ins. Co. v. Salgado, 22 So. 3d 594, 604 (Fla. 3d DCA 2009). Misrepresentations in or omissions from an insurance application may fail to meet the knowledge and belief standard (that the information given was correctly recorded, complete, and true to the best of the insured's knowledge and belief) and

11

entitle the insurer to rescind the policy without the misrepresentation or omission being intentional. Casamassina v. U.S. Life Ins. Co. in City of New York, 958 So. 2d 1093, 1101 (Fla. 4th DCA 2007). Even an insured's failure to read a policy application in its entirety prior to signing it does not preclude an insurer's right to rescind the policy for nondisclosure of material information. Nationwide Mut. Fire Ins. Co. v. Kramer, 725 So. 2d 1141, 1143 (Fla. 2d DCA 1998).

The Jimenezes cite to Perlman v. Prudential Insurance Co. of America, Inc., 686 So. 2d 1378 (Fla. 3d DCA 1997), in support of their position, but we find it to be distinguishable from the present case. In Perlman, the plaintiff was alleging the contract to be void because it was induced by Prudential Insurance's fraudulent representations as to its cost. Id. at 1379. The plaintiff argued that, if found liable, Prudential Insurance must return all the premiums plus interest. Id. at 1380. This Court rejected the plaintiff's contention: "[a]lthough this is indeed apparently the majority rule . . . we think it is erroneously in conflict with the principle that the parties to a rescinded agreement are required, insofar as possible, to restore the status quo . . . by crediting each other with 'the value of what he has received in the transaction.' " Id. This Court ruled that the policy owner is entitled to the return of the premiums already paid plus interest, less only the actuarial value of the insurance during its existence; the carrier cannot retain the expenses, costs,

commissions, and profits involved in the transaction which it expended to others or kept for itself. Id. at 1380-81.

Upon final determination of entitlement to rescission, the insured in Perlman would be entitled to interest on the returned premium. Lloyd's is correct when it argued that this does not mean that payment of interest is a condition precedent to rescission. Nowhere in Perlman did this Court find that return of interest in premiums must be fulfilled prior to rescission. The final determination of entitlement to rescission was adjudged based on other factors separate from payment of interest. Therefore, there is no basis for the Jimenez's argument that Lloyd's was not entitled to rescission because Lloyd's failed to tender the interest prior to the final determination by the trial court.

The Jimenezes further argue that Lloyd's was not entitled to rescission because Lloyd's allegedly returned the second and third premiums after 22 months (which seems to be the time between when the fire occurred in August 2009 and the tender of the premiums for the previously-expired policies). Where an insurer seeks to rescind a voidable policy, it must give both notice of rescission, and return or tender all premiums paid within a reasonable time after discovery of the grounds for avoiding the policy. Gonzalez v. Eagle Ins. Co., 948 So. 2d 1, 3 (Fla. 3d DCA 2006).

There is little case law available describing what constitutes a reasonable time to tender all premiums paid. However, we find that under the facts of this case, a 22-month delay is not demonstrated. The Jimenezes raised, for the first time, the issue of the return of premiums for the two prior policy years in their Amended Answer served May 30, 2011. Lloyd's tendered the return of the premiums for those policies on October 25, 2011.

Accordingly, the Final Judgment is reversed, and the case is remanded to the trial court with instructions to enter Final Judgment in Lloyd's favor because the policy does not provide coverage for the Jimenez's kitchen fire under the language of the Protection Device Endorsement, and because Lloyd's is entitled to rescission of the policy due to material misrepresentations in the application.

Reversed and remanded with instructions.

WELLS, J., (specially concurring).

I agree that the final judgment entered below must be reversed. The undisputed evidence is that the homeowners falsely represented in their applications for fire insurance coverage that their home had a monitored central station alarm system; that these representations were material to the insurer's decision to insure the risk; and that the insurer relied on these representations in issuing the fire insurance coverage at issue. On this record, the insurer was entitled to rescission of the policy at issue. See §627.409(1), Fla. Stat. (2007); United Auto. Ins. Co. v. Salgado, 22 So. 3d 594, 599 (Fla. 3d DCA 2009) ("[W]here a misstatement or omission materially affects the insurer's risk, or would have changed the insurer's decision whether to issue the policy and its terms, [section 627.409] may preclude recovery."); Gonzalez v Eagle Ins. Co., 948 So. 2d 1, 2 (Fla. 3d DCA 2006) ("Florida law indeed gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance."); Union Am. Ins. Co. v. Fernandez, 603 So. 2d 653, 653 (Fla. 3d DCA

15

1992) (stating that if a material misrepresentation is established at trial, "the subject insurance policy would be void *ab initio*").